JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



14 CV 10105

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAYSYS INTERNATIONAL, INC.,                    :     No.

              *Plaintiff,*                    :     VERIFIED COMPLAINT

        -against-                    :     JURY TRIAL DEMANDED

ATOS SE and WORLDLINE SA,                    :

              *Defendants.*                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RECEIVED
DEC 2 3 2014
U.S.D.C. S.D.N.Y.

Plaintiff, PaySys International, Inc. ("PaySys"), by its attorneys Sutherland Asbill &

Brennan LLP, as and for its Verified Complaint in this action against defendant Atos SE

("Atos") and Worldline SA ("Worldline") (collectively, "Defendants"), alleges as follows:

## THE NATURE OF THE ACTION

1.     This is an action for breach of contract, copyright infringement and misappro-

priation of trade secrets.  It has been made necessary by Defendants' intentional and pervasive

non-compliance with agreed-upon, clear license restrictions.  Defendants Atos and Worldline

and their respective affiliates have used and continue to use Plaintiff's software products in a

manner that exceeds the use authorized by a governing license once possessed by a predecessor

licensee of theirs (a company called SEMA).  (That license is no longer effective as to

Defendants owing to their breach of restrictions on its transfer.)  Defendants Atos and Worldline

and their respective affiliates have allowed others to have possession and use Plaintiff's software

on terms that the Defendants never had any right to promise or allow.  Defendants Atos and

Worldline have granted sublicenses, and have allowed customers to grant sublicenses, that

Defendants and such customers were forbidden from granting under the express terms of the

1

now-lapsed license.  Defendants have failed to pay amounts owed to Plaintiff in accordance with the original agreement with the predecessor licensee (i.e., SEMA).  Defendants have refused to allow Plaintiff to audit compliance by them or their customers, despite the fact that the governing license entitles Plaintiff to do so.  Defendants have refused to cooperate with Plaintiff for the enforcement of Plaintiff's rights against infringers, despite the fact that the governing license requires the licensee to cooperate in such efforts.  Defendants have provided only a small fraction of the information requested by Plaintiff necessary to determine compliance, and even the information reluctantly provided shows flagrant non-compliance and proves that Defendants' professions of compliance are false, and further shows that Defendants' awareness and control over their own compliance measures are grossly deficient.

2.      Pursuant to a written Software Acquisition Agreement (the "Base Agreement") entered in 1988 between (i) Credit Card Software, Inc. ("CCSI") and (ii) SEMA Group SA ("SEMA"), SEMA was granted a strictly limited license to use, distribute and sublicense certain CCSI credit card processing software products in 36 countries in Europe and Asia.  (CCSI was later renamed PaySys International, Inc., and in 2004, SEMA was acquired by Defendant Atos. For ease of understanding this complaint will refer to CCSI and PaySys throughout as "PaySys," and references to "Atos" will refer to Atos, SEMA, and any intervening owner of SEMA unless a distinction is being made between these entities.)  In exchange SEMA was obligated to pay certain fees to PaySys and comply with license restrictions.  As alleged in more detail below, the parties amended the Base Agreement once in 1988, twice in 1990, and a final time in 2001. Pursuant to the final version of the parties' agreement (the "Final Agreement" or "Agreement"), Atos is obligated to pay PaySys license fees as explicitly set forth in several contractual categories.  As an example of the flagrant non-compliance by Defendants with license

obligations, the unpaid fees for just one module (the Application Processing System, or APS) at the time of the commencement of this action amounted to at least $450,000, plus interest (and Defendants have licensed many such modules). Defendants have not paid PaySys this amount in the year since PaySys discovered the default and called it to Defendants' attention. This is only one of many license violations. Plaintiff's lost profits for other unlicensed activities of Atos and Worldline are far greater, and are believed to equal hundreds of millions of dollars.

3.     PaySys suspected possible violations of the Agreement only in 2013 and then promptly initiated a compliance review with Atos and Worldline in order to ascertain the existence and scope of actual violations, to determine the amount due and owing for the non-compliance, and to request that all payments that are due and owing be made immediately. PaySys' requests were met with delay and objection from Defendants, but even the small amount of information provided to PaySys by Defendants provides a convincing trail of major and persistent violations that Defendants committed or allowed to occur for over ten years. PaySys' attempt to verify and quantify the full scope of those violations have proven fruitless. PaySys therefore brings this action to recover substantial fees owed by Defendants Atos and Worldline, an award of damages and equitable relief, and a declaration that Defendants possess no license at all covering Plaintiff's software products.

## JURISDICTION AND VENUE

4.     This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.* This Court has subject matter jurisdiction over the claims asserted herein under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1367(a) (supplemental jurisdiction). Plaintiff is a citizen of a different state from both Defendants, and the amount in controversy exceeds $75,000, excluding interest and costs.

5.     Venue is appropriate in this judicial district because (a) Defendant Atos has consented and the Parties have agreed that exclusive jurisdiction and venue is placed in this judicial district in paragraph 6(d) of the 2001 amendment to the Agreement, and (b) Defendant Worldline as a present and former "Affiliate" of Atos is subject to the same obligations as Atos as provided in pages 24-25 of the Base Agreement.

### PARTIES

6.     Plaintiff PaySys is a leader in licensing financial transaction processing software applications globally. PaySys was founded as Credit Card Software, Inc. in 1981 and changed its name to PaySys International, Inc. in 1995.  PaySys is organized and exists under the laws of Florida and has its principal place of business in Maitland, Florida.  Since 2001 PaySys has been a wholly-owned subsidiary of First Data Corporation, a global payment processing company. First Data Corporation and PaySys have executive offices in New York.

7.     Defendant Atos SE and defendant Worldline SA are French multinational IT services corporations headquartered in Bezons, France.  In 2004, Atos publicly announced its acquisition of SEMA (which was the original licensee named in the Agreement) from Schlumberger; Schlumberger publicly announced its acquisition of SEMA in 2001.  In both cases, public information indicated that SEMA continued to exist and operate as a business, which led Plaintiff to believe that no impermissible transfer of the license had occurred. However, Plaintiff has recently discovered, based on corporate information provided by Defendant Atos, that Atos caused SEMA's rights in the Agreement to be legally assigned to Atos in 2004, without notification to or consent of PaySys, so that Atos, Worldline, and a vast number of affiliates have exercised rights under that license they did not possess because based on the terms of the Agreement, that assignment to Atos is invalid.  The Agreement, by its terms, permits assignment of the license only to an "Affiliate of SEMA," and Atos, Worldline, and their

4

respective affiliates (as the counterparty to the purchase of SEMA from Schlumberger in 2004) are clearly not an "affiliate of SEMA." In fact, it now appears that Atos' disregard of the clear prohibition on assignment in the terms of the Agreement spelled the beginning of the Defendants' disregard of many, many license limitations and other terms in the Agreement. Atos therefore possesses no license to use the software at all or conduct other business under the Agreement. While this complaint deals with Atos' particular violations of the license terms of the Agreement, the first and most significant violation of all is that Atos itself is not even entitled to claim the license, having neither acquired it in a proper way nor paid for the purchase of its own license.

8.     Defendant Worldline SA was until this year a direct or indirect wholly-owned subsidiary of Atos. It is now a partly owned subsidiary of Atos as a result of a public offering of Worldline stock conducted this year. Defendant Worldline SA, like Defendant Atos SE, did not request or receive PaySys's approval for any assignment of the Agreement or grant of rights involving the PaySys software. Worldline now claims and purports to hold and exercise most or all of the rights in the software previously exercised by Atos. Worldline has falsely represented to the public that it has the unlimited right to do so. Like Atos, Worldline is not licensed to use the software at all or conduct other business under the Agreement. As a result of the 2014 spin-off of Worldline, Worldline is now independently managed and operated. No assurance has been given to PaySys that Worldline is agreeing to be bound by the license restrictions contained in the Agreement.

## GENERAL ALLEGATIONS

### PaySys's Copyright Interest in Its Software

9.      PaySys has invested millions of dollars and many years of work in the development of its credit card payment processing software applications known originally as CardPac.  It is financial application software that is used by banks and transaction processing companies to process payments and manage accounts made by way of credit, debit and stored value cards.  The CardPac software consists of at least eight modules, including numerous applications within each module, which together comprise millions of lines of code.  CardPac was first released in 1983 and was enhanced by PaySys periodically during the next two decades.

10.      PaySys has complied with the Copyright Act, 17 U.S.C. § 101 et seq., and has obtained from the Register of Copyrights Certificates of Registration for PaySys's software programs and related materials.  PaySys owns the following eight copyright registrations in the software programs and related materials, each registered November 7, 2014:

      a)  CardPac - OLA 606: OAS100, Reg. No. TXu001913381

      b)  CardPac - SSC 140: SSU900, Reg. No. TXu001913382

      c)  CardPac - OLC 400: OCD200, Reg. No. TXu001913412

      d)  CardPac - CSM 700: KSD200, Reg. No. TXu001913410

      e)  CardPac - APS 400: APD200, Reg. No. TXu001913414

      f)  CardPac - IMP 420: CCSUT1, Reg. No. TXu001913415

      g)  CardPac - ITS 700: ITD120, Reg. No. TXu001913416

      h)  CardPac - CPS 612: CPD110, Reg. No. TXu001913417.

True copies of the Certificates of Registration are attached hereto as Exhibit A.

11.     PaySys is currently and at all relevant times has been the sole owner of all right, title and interest in and to the copyrights in PaySys' CardPac software programs and related materials, including applicable copyrights and trade secrets.

12.     The CardPac software and related source code and technical information are trade secrets of PaySys which can be used and disclosed by Atos and its licensees only to the extent allowed by the Agreement.  The Agreement contains extensive confidentiality requirements intended to protect and maintain those trade secrets.

**The Parties' Licensing Agreement**

13.     The respective rights and responsibilities of Plaintiff PaySys and Atos were and are set forth in the Agreement.  Plaintiff has performed its obligations under the Agreement, but the Defendants (including as putative successor(s) to SEMA) have not.

14.     Under a series of agreements dating between 1988 and 2001, SEMA acquired from PaySys contractually limited rights (i) to use the CardPac software itself, and (ii) to sell to others limited licenses to use the CardPac software.  The series of agreements by which SEMA acquired its limited rights are as follows:

    a.     On or about October 31, 1988 the parties entered into a Software Acquisition Agreement (herein, the "Base Agreement").  PaySys licensed its software to SEMA, and granted certain rights to SEMA to sublicense its software in 36 designated countries in Europe and Asia.

    b.     The Base Agreement was amended in a writing (the "Dec. 1988 Amendment") signed by PaySys and SEMA and dated December 28, 1988 but to take effect as of October 31, 1988, the date of the Base Agreement.

c.       On or about March 1, 1990, PaySys and SEMA entered into a Second Amendment to Software Acquisition Agreement (the "March 1990 Agreement") by executing a writing bearing that date.

d.       On or about October 24, 1990, PaySys and Atos entered into a signed writing (the "Oct. 1990 Amendment") in order to "clarify" the terms related to payments due from SEMA to PaySys on sales of copies of the APS module.

e.       On or about April 27, 2001, PaySys and SEMA entered into a Confidential Settlement Agreement (the "Apr. 2001 Amendment") by executing a writing bearing that date. The Apr. 2001 Amendment effected a further amendment of the Base Agreement, expanded SEMA's territory to the entire world other than North and South America, and was the final amendment of the agreement sued on herein. The currently operative agreement is referred to herein as the "Agreement."

15.       Pursuant to the Agreement, SEMA received a copy of the CardPac software in object code and source code form. Possession of the source code of a software program gives programmers an important advantage because it equips them, *inter alia*, (i) to customize the software, (ii) to port it to a different platform or operating system, and (iii) to add non-original modules to the program. These activities cannot practically be accomplished without the source code. If performed by someone other than the owner of the software program without a license from the owner, all of these activities violate the owner's copyright and trade secret rights in the software program.

16.       Through the terms of the Agreement, SEMA acquired the right to use the CardPac software itself *and* to modify the CardPac source code as it saw fit. SEMA also acquired the right to license the CardPac software to end users in countries outside North and South America.

Defendant SEMA did not, however, have the right under the terms of the Agreement to authorize those end users (or any other person or entity besides SEMA itself) to modify the software. All the license restrictions applicable to CardPac in the Agreement apply equally to such things as associated program and system documentation, reference manuals, user manuals and flowcharts, and to any work that derives from or contains any part of the software. Upon information and belief, the software that the Defendants and their affiliates have licensed and used containing CardPac software include software Defendants have named Cardlink, Cardlink II, ASCCEND, SemaCard, and Cardlink APS. (For convenience, references to PaySys software in the complaint include these other software packages, as the context may require, because the license restrictions of the Agreement apply equally to software that includes or derives from any part of the CardPac software.)

17.     Certain provisions of the parties' Agreement are particularly applicable to the instant action, and are set forth for convenience below:

a.     In Section 10 of the Base Agreement, SEMA warrants that "SEMA shall not grant, and shall take reasonable measures to assure that no Distributor grants, any rights or privileges thereunder which exceed the rights granted to [Atos] hereunder."

b.     In the Agreement, SEMA was authorized to sublicense its rights in the software only to (i) Distributors, but the right to appoint Distributors was limited to a period of ten years, and (ii) User Licensees, whose rights were limited to "Use," as defined in the Agreement. According to the Agreement, "A User Licensee does not have the further right to grant sublicenses."

c.      In Section 10(iv) of the Base Agreement, SEMA warrants that "Any purported License which violates or contradicts the terms and conditions of this Agreement shall not be a valid license."

d.      Section 17(b) of the Base Agreement states that "Neither party may assign this Agreement without the prior written consent of the other" although an "Affiliate of SEMA" is exempted from this prohibition.  "Affiliate" is defined in section 1(a) of the Base Agreement as "any corporation or other business entity which controls, is controlled by or is under common control with a party to this Agreement."

e.      In Section 14(a) of the Dec. 1988 Amendment SEMA agrees "to treat the Products . . . in the same fashion that it treats its own valuable confidential and proprietary information and to refrain from using or disclosing the Products except as permitted in this Agreement."

f.      Schedule F to the Dec. 1998 Amendment requires SEMA to include in each license it issues a term permitting termination of the license for any breach of the licensee's confidentiality obligations.

g.      Section 7 of Schedule F of the Dec. 1998 Amendment requires SEMA to include in each license it issues a term permitting it to audit the licensee's adherence to the confidentiality obligations imposed by the license.

**Defendant's Breaches and Infringing Activities**

18.      Defendant Atos has breached its obligations under the Agreement in multiple ways, as follows.

19.      First: Atos promised in the Agreement and clarified specifically in the Oct. 1990 Amendment that it was obligated to pay (i) $100,000 for each APS license sold in Japan and all

European countries other than Greece and Turkey, and (ii) $50,000 for each APS module sold in Asia (ex Japan) and Greece and Turkey. Section 7 of the Final Agreement provides for the amount instead to be $75,000 per APS license in certain cases. The Defendants have in fact made numerous such sales of APS licenses, without payment to PaySys. Defendants claim the number to be seven or eight. Defendants Atos and Worldline have refused to give PaySys sufficient information to verify the correct number, even though PaySys has informed the Defendants' senior management that the information regarding APS sublicensees is incomplete, contains errors, and does not take account of events like transfers, reorganizations, and service transactions that resulted in additional licensing of the APS module. Despite Defendants' legal obligation to do so, and until PaySys initiated its compliance verification, Defendants never acknowledged or reported making a single sale to PaySys. Even today, PaySys has not been paid for any APS licenses. Defendants' failure to identify these relevant sales and pay PaySys the agreed fees is in breach of the Agreement and represents an infringement of PaySys's rights in the APS module for the reason that a covenant directly connected to the APS license has been materially violated.

20.    Second: Based on public information and documentation provided by Defendants Atos and Worldline, PaySys has recently discovered that Atos, Worldline, and their affiliates and predecessors intentionally ignored the license restrictions contained in the Agreement by granting customers licenses that (1) substantially exceed the terms for sublicensing to users as defined and permitted in the Agreement, and (2) do not contain minimum license terms and restrictions that the Agreement requires be included in each user license. Plaintiff has reason to believe that some or all of the customer contracts signed by Atos, Worldline, or their affiliates or predecessors give the customer the explicit right to modify the licensed software. The right to

modify software (i.e., in copyright terms, to make a "derivative work") is an exclusive right retained by PaySys as owner of the applicable copyrights. The Agreement entitles SEMA to exercise this right; it does not entitle SEMA to sublicense that right. The "Use" privileges as defined in the Agreement and which SEMA is entitled to sublicense to end users do not include the right to modify the software or make a derivative work. The right to modify software is a very important and valuable consideration in licensing and software practice generally – by purporting to sublicense to customers the right to modify the software without the consent of PaySys and due consideration, Defendants violated the Agreement, infringed PaySys's intellectual property rights, and have caused customers and business partners to infringe PaySys's intellectual property rights. Defendants' practice of awarding customers and business partners license rights that Defendants have no right to confer also gives Defendants an unfair cost advantage because Defendants avoid attendant charges for such a sublicense due PaySys.

21.     In addition to the violation involving the sublicense of the right to make derivative works, the customer agreements of Atos, Worldline and their affiliates recently disclosed to PaySys fail to include certain key the provisions that Schedule F of the Dec. 1998 Amendment requires SEMA to include in every customer agreement. Some of the customer agreements also contain other deviations from the requirements of the Agreement not approved by PaySys.

22.     The failure of Atos and Worldline to adhere to the sublicensing requirements and conditions contained in the license the Agreement is both a breach of the parties' Agreement and places customers in the position of infringing PaySys's copyright and trade secrets. According to the 1988 Agreement (page 16), "Any purported License which violates or contradicts the terms and conditions of this Agreement shall not be a valid License." This wrongful and

unlicensed conduct is continuing and is an ongoing violation of the Agreement, despite the admonition in the Agreement that SEMA "may not convey any other right, title or interest" in the software without PaySys's consent.

23.     During the compliance verification initiated by PaySys during the past year, an Atos senior officer repeatedly assured PaySys that Atos was in full compliance with the requirements of the Agreement.  Atos also stated that its customer contracts were "in compliance" with the requirements of the Agreement.  In light of the facts known today, these statements were false and intended to misrepresent and conceal the truth of systematic non-compliance with the requirements of the Agreement.

24.     Third:  Based on public information and documentation provided by Atos and Worldline, PaySys has recently found that both the Defendants and their customers are dealing extensively with third-party service providers and application developers by improperly allowing them, inter alia, to engage in application development and support, relicensing of modifications and enhancements they create, hosting and outsourcing, and support activities, all of which require unlicensed access to or use of the PaySys software.  For example, on September 14, 2014, Worldline publicly announced that it had entered into a five-year agreement with a Thai company called Accellence.  According to Worldline's press release, Worldline's agreement with Accellence provided Accellence the right to resell and support PaySys software.  The Accellence agreement has reportedly been in place since 2009, renewed each year.  However, the Agreement flatly prohibits appointment of new distributors by Atos after 1998.  Atos gives no explanation for why it appointed Accellence as a distributor, especially in the middle of an audit in which Atos's compliance with the terms of the Agreement was under review.

25.     Fourth:  Publicly available information shows that other business operators acting in concert with Defendants (through Defendants' "extensive partner ecosystem")  and their licensed end users have been given access to and use the PaySys software, including source code, without the benefit of a valid license.  PaySys has demanded that Defendants Atos and Worldline investigate and explain publicly reported activities of numerous third-party service organizations that appear to involve the software, including in some cases application development.  These service organizations appear to include Accellence, Attra, IBM, Technological Information Consultants, iSphere Global, Apar Technologies Sdn Bhd, A-IT Software Services Pte Ltd, iTAC MSC Outsourcing, SZ IT Center, ACI Worldwide, IAM, DL Resources Pte. Ltd, and WiPro.  Clause 10 of the 1988 Letter Agreement requires SEMA to notify PaySys of any infringement of PaySys's rights that comes to the attention of its senior management and to cooperate reasonably with PaySys to attempt to halt such infringement.  Yet Atos and Worldline have declined to provide information or assistance regarding the evidence of access and use that PaySys has uncovered involving these third parties.

26.     Fifth:  As alleged above, in 2004, in reckless disregard of the requirements of the Agreement, Atos caused SEMA to assign the Agreement to Atos SE without the consent of PaySys.  This violated Section 17(b) of the Base Agreement as well as the copyright laws.  Such an attempted assignment is invalid and ineffective – as if a license holder were to grant a license to a stranger, and the assignee acquires no rights as a result of the invalid assignment.  Furthermore, Atos simultaneously caused SEMA to dissolve, resulting in the loss and abandonment of SEMA's own license. Since the date of that impermissible assignment neither Atos nor Worldline nor any other licensee or sublicensee or other entity claiming rights through

the license held by SEMA has had the right to use the PaySys software products and related materials that are the subject of this complaint.

PaySys's Attempts To Rectify the Parties' Contractual Relationship

27.     Beginning in June 2013, PaySys launched an effort, which is continuing to the present, to verify Atos's compliance with the requirements of the Agreement and to enforce PaySys's rights.  PaySys has exercised its right under the Agreement and demanded that Defendants cooperate with PaySys to ascertain whether the conduct of Defendants, their customers, and service organizations acting in concert with them have violated the Agreement and PaySys's intellectual property rights.

28.     Plaintiff informed Defendant that Plaintiff was willing to negotiate with Defendant the terms and amount of payment that was due and owing.  Defendant refused to pay or provide PaySys with credible justification for not paying the sums that were due and owing.

29.     Through a series of correspondence and communications, Plaintiff has attempted to resolve its claim for payment for the unlicensed conduct.

30.     Despite Plaintiff's demand to Defendants in an effort to enforce its legal rights under the license agreement, Defendants have refused to permit PaySys to audit all but a small number of Defendants' agreements with their customers.

31.     Defendants have refused to provide PaySys with a proper accounting of its sales of APS licenses.

32.     Defendants have refused to provide PaySys with information requested by PaySys to verify whether customers and third parties are using the CardPac software consistently with the Agreement and PaySys' intellectual property rights.

33.     Defendants have refused to provide PaySys access to information that would allow PaySys to investigate whether Defendants or their customers have granted sublicenses to third-party service providers and application developers, such as Worldline did through its agreement with Accellence as described in Worldline's press release of September 14, 2014.

## FIRST CAUSE OF ACTION

(Breach of Contract)

34.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 to 33.

35.     Defendants Atos and Worldline, allegedly as successor to SEMA and/or as an affiliate of SEMA, purport to operate under written contracts with Plaintiff PaySys, including the Agreement, which require SEMA to pay Plaintiff for each relevant sale of a license to the APS module.

36.     The Agreement under which Defendants purport to operate requires that customers be made subject to prescribed license limitations, but Defendants have not included those limitations in the customer agreements and Defendants instead systematically authorize or permit customers to exceed those limitations.

37.     The Agreement under which Defendants purport to operate precludes sublicensing, except of "use" rights to "user" customers.  Appointment of "distributors" after 1998 is prohibited.  Except for the right given to SEMA in the Agreement to sublicense to a "User" the right to "Use" the software, the Agreement does not allow Defendants or their customers to sublicense third-party service providers any right in the PaySys software. Application development, resale or customization of software are all outside the definition of "Use," which is limited to "transferring any portion of any Product from storage units or media

into equipment for processing (whether by electronic, mechanical or other means); utilizing any portion of any Product in the course of the operation of any equipment or programs; merging any Product or portion thereof into another product; or referring to any documentation included in the definition of product for the purpose of understanding or operating the Product." [Clause 1(o), 1988 Agreement].

38.     The Agreement also prohibits SEMA from assigning the Agreement without the PaySys' written consent to any other entity, except to an Affiliate of SEMA.  The 2004 assignment by SEMA to Atos violates the Agreement and voids the Agreement.  Since the date of that impermissible assignment, all activities by Defendants and their licensees have violated PaySys' rights in the software and breached the Agreement.

39.     Plaintiff PaySys has demanded payment from Defendants Atos and Worldline for each of these breaches, and by the filing of this Complaint hereby demands payment of all unpaid sums.  Defendants has failed and refused, and it continues to fail and refuse to pay a substantial amount of money that is due and owing for the violation of the Agreement.

## SECOND CAUSE OF ACTION

### (Copyright Infringement)

40.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 to 39.

41.     Defendants have infringed Plaintiff's copyrights in violation of Copyright Act, 17 U.S.C. § 101 et seq. without authorization and consent.

42.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of Plaintiff's legal rights.

43. As a direct and proximate result of said infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

44. Plaintiff is further entitled to their reasonable and necessary attorneys' fees and full costs pursuant to Copyright Act, 17 U.S.C. § 505 and otherwise according to law.

### THIRD CAUSE OF ACTION

(Misappropriation of Trade Secrets – New York Law)

45. Plaintiff repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 to 44.

46. The PaySys software, source code, system documentation, reference manuals, user manuals and flow charts associated therewith ("PaySys Trade Secrets") constitute trade secrets under New York law.

47. At all times PaySys has taken appropriate measures to protect the PaySys Trade Secrets from unauthorized disclosure or use, including by including specific provisions in the Agreement that require customer agreements to contain strict confidentiality terms.

48. Any unauthorized disclosure or unauthorized use of PaySys Trade Secrets constitutes a misappropriation of trade secrets under New York law.

49. On information and belief, and as proven by Worldline's agreement with Accellence, Defendants have (i) disclosed PaySys Trade Secrets to persons or entities other than those permitted by the Agreement, (ii) allowed its licensees to use the PaySys Trade Secrets in ways not authorized by the Agreement, and (iii) since the illegal assignment from SEMA to Atos in 2004, have themselves and allowed others to use the PaySys Trade Secrets without authorization.

50.     As a direct and proximate result of said disclosures, and said unauthorized uses, Plaintiff is entitled to damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

(Misappropriation of Trade Secrets – FLA. STAT. § 688.001 et seq.)

51.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 to 50

52.     Defendants' conduct also constitutes actionable misappropriation of trade secrets under the Uniform Trade Secrets Act as enacted by Florida.

53.     PaySys is entitled to the remedies provided by that Act, including damages amounting to the actual loss caused by the misappropriation of the PaySys Trade Secrets and the unjust enrichment to Defendants caused by the misappropriation that is not taken into account in computing the actual loss.  Alternatively, at PaySys' option, PaySys is entitled to a reasonable royalty for Atos' and Worldline's unauthorized disclosure or use of the PaySys Trade Secrets.

## FIFTH CAUSE OF ACTION

(Declaratory Judgment)

54.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 to 53.

55.     The governing license issued to SEMA and now claimed by Atos was improperly assigned by SEMA to Atos in 2004 without the consent of PaySys.  At the time, Atos was not an Affiliate as the Agreement defines that term, and thus was not entitled to take an assignment of the governing license without PaySys' consent.  This impermissible action violated an unambiguous prohibition in the Agreement and copyright law, and voided the governing license

claimed by Atos and any sublicenses granted by SEMA or Atos by virtue of the governing license.

56.     Furthermore, any license issued by Defendants Atos, Worldline, their affiliates, or any distributor to a third party is invalid if as written or in practice the licensee is permitted to engage in activities with respect to the CardPac software that exceed the limited use privileges that SEMA is authorized by the Agreement to convey to its licensees.

57.     There is a substantial controversy between PaySys and Defendants Atos and Worldline concerning (i) the current validity of the governing license and (ii) the validity of licenses granted by Defendants to third parties to use the CardPac software.

58.     The controversy is substantial and immediate, and warrants the issuance of a declaratory judgment.

59.     There is an actual controversy concerning the validity of such licenses.

60.     Plaintiff is entitled to a declaration that any license found to be issued by Defendants Atos and Worldline or their affiliates or used in violation of the Agreement is void.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff PaySys respectfully requests a trial by jury of all issues properly triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PaySys International, Inc. demands entry of judgment in its favor and against Defendant Atos SE and Defendant Worldline SA as follows:

I.      Awarding PaySys damages in an amount to be determined for Atos' and Worldline's breach of the Agreement;

II.      Awarding PaySys damages in an amount to be determined for Atos' and Worldline's infringement of PaySys's copyright;

III.     Awarding PaySys damages in an amount to be determined for Atos' and Worldline's misappropriation of PaySys trade secrets;

IV.      Immediate injunctive relief ordering Atos and Worldline to submit to an audit of their, their customers' and any other purported sublicensees' compliance with the Agreement;

V.      A declaration that the Agreement is void by virtue of its impermissible assignment without consent by SEMA to Atos in 2004;

VI.      A declaration that all licenses or sublicenses issued by Atos, Worldline, their affiliates, or predecessors in violation of the Agreement or used in violation of the Agreement are void;

VII.     A permanent injunction enjoining the Defendants Atos and Worldline, and their respective officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with it, from continued acts in breach of the Agreement;

VIII.    A permanent injunction enjoining Defendants Atos and Worldline, and their respective officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with it, from the continued violation of the Florida Uniform Trade Secrets Act;

IX.      Prejudgment interest at the statutory rate from the time payments came due;

X.      Any other accounting for damages;

XI.        Such other and further relief as to this Court shall seem just and proper.

Dated: New York, New York
           December 23, 2014

                                   SUTHERLAND ASBILL & BRENNAN LLP

                                   By _____
                                        Robert D. Owen
                                        Travis James Mock

                                   The Grace Building
                                   1114 Avenue of the Americas, 40th Floor
                                   New York, New York 10036
                                   (212) 389-5000
                                   *Attorneys for Plaintiff*

VERIFICATION

STATE OF NEBRASKA      )
                                          ss.:
COUNTY OF DOUGLAS    )

     GREGORY A. PIEL, being duly sworn, deposes and says:

     1.     I am the Assistant Secretary of plaintiff PaySys International, Inc.  I reside in Douglas County, Nebraska.

     2.     I have read the foregoing Complaint and know the contents thereof.  The contents thereof are known to me to be true or have been supplied to me by others on whom I customarily rely in the conduct of my business affairs and are true to the best of my knowledge, information or belief.  As to matters therein stated to be alleged on information and belief, I believe them to be true.

 

_____
          Gregory A. Piel

Sworn to before me this
23rd day of December 2014.


_____
          Notary Public

GENERAL NOTARY - State of Nebraska
PEGGY A. ETHRIDGE
My Comm. Exp. August 1, 2017

A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-381

**Effective date of
registration:**

November 7, 2014

---

**Title** ─────────────────────────

Title of Work: CardPac - OLA 606: OAS100

**Completion/Publication** ───────────

Year of Completion: 1996

**Author** ─────────────────────────

■ Author: PaySys International, Inc.

Author Created: computer program

Work made for hire: Yes

Citizen of: United States

**Copyright claimant** ───────────────

Copyright Claimant: PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

**Rights and Permissions** ────────────

Organization Name: Sutherland Asbill and Brennan LLP

Name: Elisabeth A. Langworthy

Email: eteas@sutherland.com                    Telephone:   202-383-0100

Address: 700 Sixth Street

Suite 700

Washington, DC 20001  United States

**Certification** ───────────────────

Name: Daniel C. Neustadt

Date: November 7, 2014

Applicant's Tracking Number: 34250-1622

---

Page 1 of 1

**Registration #:**   TXU001913381
**Service Request #:**   1-1882689121

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

Registration Number

# TXu 1-913-382

**Effective date of
registration:**

November 7, 2014

---

## Title

**Title of Work:** CardPac - SSC 140: SSU900

## Completion/Publication

**Year of Completion:** 1989

## Author

■ **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions

**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com          **Telephone:** 202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification

**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

---

**Registration #:**  TXU001913382
**Service Request #:**  1-1882689226

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-412

**Effective date of
registration:**

November 7, 2014

---

## Title
**Title of Work:** CardPac - OLC 400: OCD200

## Completion/Publication
**Year of Completion:** 1992

## Author
▪ **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant
**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions
**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com          **Telephone:** 202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification
**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

---

**Registration #:**  TXU001913412
**Service Request #:**  1-1882689031

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-410

**Effective date of registration:**

November 7, 2014

---

## Title
**Title of Work:** CardPac - CSM 700: KSD200

## Completion/Publication
**Year of Completion:** 1995

## Author
■ **Author:** PaySys International, Inc.
**Author Created:** computer program

**Work made for hire:** Yes
**Citizen of:** United States

## Copyright claimant
**Copyright Claimant:** PaySys International, Inc.
495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions
**Organization Name:** Sutherland Asbill and Brennan LLP
**Name:** Elisabeth A. Langworthy
**Email:** eteas@sutherland.com          **Telephone:** 202-383-0100
**Address:** 700 Sixth Street
Suite 700
Washington, DC 20001  United States

## Certification
**Name:** Daniel C. Neustadt
**Date:** November 7, 2014
**Applicant's Tracking Number:** 34250-1622

---

Registration #:  TXU001913410
Service Request #:  1-1882688996

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-414

**Effective date of registration:**

November 7, 2014

## Title

**Title of Work:** CardPac - APS 400: APD200

## Completion/Publication

**Year of Completion:** 1992

## Author

■ **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions

**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com          **Telephone:** 202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification

**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

**Registration #:**   TXU001913414
**Service Request #:**   1-1882689156

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TXu 1-913-415**

**Effective date of registration:**

November 7, 2014

---

## Title

**Title of Work:** CardPac - IMP 420: CCSUT1

## Completion/Publication

**Year of Completion:** 1992

## Author

■ **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions

**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com        **Telephone:** 202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification

**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

---

**Registration #:**  TXU001913415
**Service Request #:**  1-1882689191

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-416

**Effective date of registration:**

November 7, 2014

---

## Title

**Title of Work:** CardPac - ITS 700: ITD120

## Completion/Publication

**Year of Completion:** 1997

## Author

■ **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions

**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com          **Telephone:**  202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification

**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

---

**Registration #:**   TXU001913416
**Service Request #:**   1-1882688961

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-913-417

**Effective date of registration:**

November 7, 2014

---

## Title

**Title of Work:** CardPac - CPS 612: CPD110

## Completion/Publication

**Year of Completion:** 1997

## Author

■  **Author:** PaySys International, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** PaySys International, Inc.

495 N. Keller Road, Suite 400, Maitland, FL, 32751, United States

## Rights and Permissions

**Organization Name:** Sutherland Asbill and Brennan LLP

**Name:** Elisabeth A. Langworthy

**Email:** eteas@sutherland.com          **Telephone:** 202-383-0100

**Address:** 700 Sixth Street

Suite 700

Washington, DC 20001  United States

## Certification

**Name:** Daniel C. Neustadt

**Date:** November 7, 2014

**Applicant's Tracking Number:** 34250-1622

---

**Registration #:**   TXU001913417

**Service Request #:**   1-1882688925

Sutherland Asbill and Brennan LLP
Elisabeth A. Langworthy
700 Sixth Street
Suite 700
Washington, DC 20001  United States