UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

PAYSYS INTERNATIONAL, Inc.,

              Plaintiff,

- against -

ATOS SE, WORDLINE SA, ATOS IT
SERVICES, and SEMA SA,

              Defendants.
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/15

**OPINION AND ORDER**

14 Civ. 10105 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION AND BACKGROUND

        Paysys International ("Paysys") is a software company that, in 1988, licensed one of its products — CardPac — to a company called Sema, predecessor to Sema SA and Atos IT, two of the named defendants here.[1] The license was codified in an agreement ("License Agreement") that, according to Paysys, strictly limited Sema's ability to assign or sublicense its rights.[2] In 2001, Paysys and Sema entered into a settlement ("Settlement Agreement") that effectively amended the License Agreement to, *inter alia*, designate the Southern District of New York as the proper venue, and New York law as the governing law, for adjudicating future

---

[1] Unless otherwise noted, all facts are drawn from the Verified Amended Complaint ("Compl.").

[2] *See id.* ¶ 2.

disputes.[3] In 2004, Sema was acquired by a French company, Atos SE ("Atos"), and eventually renamed Atos IT Services ("Atos IT").[4] In the course of the acquisition, Sema (or Atos IT) assigned some or all of its rights under the License Agreement to Atos ("Assignment Agreement").[5] Through a series of internal transactions, all of Sema's assets were eventually transferred to the control of Atos.[6] At present, Sema is "defunct,"[7] and it is unknown whether Atos IT continues to operate[8] — but in either case, Atos now possesses and exercises all of the rights originally granted to Sema under the License Agreement.[9]

Paysys has alleged multiple grounds for relief, but each rests on the same essential theory. Namely, Sema was not permitted, under the terms of the

---

[3] *See id.* ¶ 4.

[4] *See id.* ¶¶ 14(d), 14(f). *See also id.* ¶ 15 ("Atos controls and dominates every aspect of [Atos IT] such that Atos and [Atos IT] are alter egos for each other.").

[5] *See id.* ¶ 14(e).

[6] *See id.* ¶¶ 16(b)-(d).

[7] *Id.* ¶ 18. *Accord id.* ¶ 16 ("Paysys has not been able to verify, independently from information supplied to it by Atos, whether [Sema] is actually conducting business, is actually in business at all, was merged and its assets stripped as alleged above, or is exercising any rights under the Agreement.").

[8] *See id*. ¶ 17 ("[Sema] and [Atos IT] are made [] defendants herein out of caution to ensure that all the necessary parties are before the Court.").

[9] *See id*. The fourth defendant in this case, Worldline SA, may or may not be relevant to the litigation; Paysys believes it to be the alter ego of Atos. *See id.* ¶ 12.

License Agreement, to transfer or assign its interests, and that the acquisition of Sema by Atos — and the resulting assignment of intellectual property — amounts to some combination of breach of contract, copyright infringement (under both domestic and foreign law), misappropriation of trade secrets, conversion, and unfair competition.

The four named defendants have moved to dismiss under Rule 12(b)(2) — for want of personal jurisdiction over Atos, Worldline, and Atos IT (the "French defendants") — as well as Rule 12(b)(6), for failure to state a claim. The jurisdictional argument has two components. *First*, the French defendants do not operate in the United States — much less New York — which means they are not subject to the general jurisdiction of this Court. *Second*, although the Settlement Agreement grants this Court specific jurisdiction over disputes between Paysys and Sema, defendants argue that Paysys is estopped from asserting the forum designation clause against the French defendants, because Paysys's contract claim rests on the proposition that Sema had no authority to assign its rights and liabilities in 2004, which, if true, means the French defendants are not parties to the License Agreement (where the forum designation clause is codified). Therefore, according to defendants, Paysys cannot argue that the forum designation clause of the License Agreement — but *only* that clause — applies to the French defendants. The upshot of Paysys' legal theory is that the License Agreement does not apply to

the French defendants *at all* — Paysys cannot "pick and choose one provision of [a contract while] repudiating all others."[10]

Defendants offer several arguments in support of their motion to dismiss for failure to state a claim. *First*, defendants maintain that Paysys's contract claims fail as a matter law, because the License Agreement unambiguously permitted Sema to assign its rights and liabilities to Atos. *Second*, defendants argue that Paysys's claims for conversion and unfair competition are legally defective, duplicative of its breach of contract claims, and time-barred. *Third*, defendants argue that Paysys's claim for misappropriation of trade secrets is legally defective and time-barred. *Fourth*, and finally, defendants argue that Paysys's domestic copyright claims fail as a matter of law, and that its foreign copyright claims, though potentially viable, should be adjudicated elsewhere under the doctrine of *forum non conveniens*.

For the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part, and I reserve judgment on the bulk of the parties' arguments, pending jurisdictional discovery to determine the exact relationship among the defendants.

## II.  STANDARD OF REVIEW

When resolving a motion to dismiss, the court must "accept[] all

---

[10] Defendants' Memorandum of Law in Support of Its Motion to Dismiss on Jurisdictional Grounds ("Jurisdictional Mem.") at 15.

factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[11]  A claim is plausible — and survives dismissal — "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

## III.  PERSONAL JURISDICTION

A court has personal jurisdiction over a foreign defendant if (1) the defendant is subject to the court's specific jurisdiction, or (2) the defendant is subject to the court's general jurisdiction.[13]  With respect to specific jurisdiction, Paysys's main argument is that defendants are subject to the terms of the License Agreement, which specifies the Southern District of New York as the forum for adjudicating disputes.  In response, defendants protest that Paysys wants to "have it both ways."[14]  On the one hand, Paysys argues that Sema's 2004 assignment of its rights and liabilities to the French defendants violated the terms of the License Agreement, so the French defendants never became *parties* to the License Agreement.  On the other hand, Paysys argues that the French defendants are

---

[11]  *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[12]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13]  *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (explaining the difference between "general or all-purpose jurisdiction, and specific or case-linked jurisdiction").

[14]  Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss on Jurisdictional Grounds ("Jurisdictional Rep.") at 2.

bound by the forum designation clause of the License Agreement, because they "purport[ed] to operate under the [License Agreement]."[15]  In defendants' view, "[a] party to a contract cannot enforce a forum selection clause against a non-signatory when the enforcing party avers that the relevant contract itself is invalid . . . pick[ing] and choos[ing] one provision of [a contract while] repudiating all others."[16]

        Although defendants' "pick and choose" argument may not always carry the day, it has some appeal in this case.  It would be awkward for this Court to exercise personal jurisdiction over the French defendants pursuant to the forum selection clause, but subsequently hold that the forum selection clause is void as applied to the French defendants — because the 2004 assignment was invalid — thereby stripping this Court of its authority to entertain the contract issue in the

---

    15      Plaintiff's Consolidated Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") at 10.

    16      Jurisdictional Mem. at 15.  *Accord Meinecke Disc. Muffler Shops v. Feldman*, 480 F. Supp. 1307 (S.D. Tex. 1979) (holding that plaintiff was estopped from asserting against defendant the forum selection clause of an assignment agreement that plaintiff otherwise sought to invalidate).  Paysys tries to distinguish *Meinecke* on the grounds that there, "the [] court ruled against applying the choice of jurisdiction [clause] because the assignment had not been properly signed or agreed to," *not* — as here — because plaintiff was trying to invoke the forum selection clause in an agreement that it otherwise sought to disavow.  Opp. Mem. at 10.  But a careful reading of *Meinecke* makes clear that it was plaintiff's seemingly irreconcilable position, not the absence of contract formalities, that drove the court's analysis.

first place.[17]

Before wading into this difficult issue — an issue made more difficult by the lack of on-point authority in this District — prudence counsels in favor of exploring other possible bases of jurisdiction. Moreover, because such exploration will clarify the exact relationship among the defendants, it is likely to shed light on the *forum non conveniens* issue raised by Paysys's copyright claims. Jurisdictional discovery is ordered to determine whether Paysys's long-arm theory of specific jurisdiction, or any of its theories of general jurisdiction, bear out factually.[18] If discovery reveals that Atos and/or Worldline is, indeed, the alter ego of Sema (or Atos IT), all defendants will be subject to this Court's general jurisdiction.[19]

---

[17]   In addition to other contract remedies, Paysys also seeks a declaration that the 2004 assignment was void. *See* Compl. at 55. In other words, if Paysys prevails, one result will be the *invalidation* of the only document that supposedly gives this Court jurisdiction over the French defendants.

[18]   Paysys has made a prima facie showing with regard to its alter ego theory. It has outlined facts — in particular, the financial interdependence of all four defendants, and the existence of overlapping corporate policies — that, "if credited, would suffice to establish [general] jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation marks and citation omitted).

[19]   For the reasons explained below, a finding that Atos and/or Worldline is an alter ego of Sema (or Atos IT) will also impact Paysys's substantive allegations. *First*, it will widen the scope of Paysys's contract claims — because those claims will lie against the French defendants — which may in turn affect the viability of Paysys's alternative tort theories. *Second*, it will impact the Court's analysis of defendants' *forum non conveniens* argument regarding the foreign copyright claims.

Paysys's arguments in favor of exercising personal jurisdiction over the French defendants (apart from the forum designation clause) is governed by the "Beech test." The Beech test consists of four factors, the first of which is "essential" to the exercise of jurisdiction[20] — "(1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies exercised by the parent."[21] All of these factors are established, *prima facie*, by Paysys's Complaint. Most importantly, the Complaint alleges — and defendants do not dispute — common ownership.[22] Furthermore, in press releases and financial reports, Atos often refers to "the Group" of companies that comprise its global business[23] — and its publicity platforms, such as its website, imply that Atos IT (among other entities not party to this lawsuit) are merely the North American business wing of Atos.[24]

---

[20] *King County, Wash. v. IKB Deutsche Industriebank AG*, 712 F. Supp. 2d 104, 110 (S.D.N.Y. 2010).

[21] *Id.*

[22] *See* Compl. ¶¶ 39-41. *See also* Jurisdictional Rep. at 7-8 ("Defendants do not dispute that the U.S. Entities are indirect wholly-owned subsidiaries of [Atos].").

[23] *See* Compl. ¶¶ 54-55.

[24] *See id.* ¶¶ 65-68.

In response, defendants offer two arguments. *First*, they argue that Paysys has not yet satisfied the Beech test as a matter of fact.[25] While true, that is no basis for granting defendants' 12(b)(2) motion. It is a reason to order jurisdictional discovery — where, as here, plaintiff has made a *prima facie* showing to support an alter ego theory. *Second*, defendants argue that the Beech test is not the relevant legal standard. This argument fails. To begin, defendants suggest that the Beech test has been superceded by the Supreme Court's holding in *Daimler AG v. Baumann*.[26] But the Second Circuit has explicitly held otherwise. As it recently explained, "*Daimler* expressed doubts as to the usefulness of agency analysis . . . that focuses on [an] affiliate's importance to the defendant," *not* — as here — "on whether the affiliate is so dominated by the defendant as to be its alter ego."[27] Secondly, defendants maintain that alter ego analysis is properly governed by French law, not New York law (as the Beech test implies). That is incorrect. Defendants have conflated the question of corporate veil-piercing at the *liability*

---

[25]   *See, e.g.*, Jurisdictional Rep. at 7-8 ("[T]hat the U.S. Entities are indirect wholly-owned subsidiaries of [Atos] . . . is not enough on its own to establish jurisdiction. . . . Instead, there must be extraordinary control . . . [such as] near total ownership, overlapping directors, and uniform policies. . . .") (internal citations omitted).

[26]   134 S.Ct. 746 (2014).

[27]   *Sonera Holdings B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). *Accord NYKCool A. B. v. Pacific Int'l Servs.*, 66 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) ("The [*Daimler*] Court did not express any doubt as to the soundness of an alter ego theory of jurisdiction. . . .").

stage with the distinct question of whether one company is the "mere department" of another. The latter is what drives the jurisdictional analysis.[28]

Defendants may be right, of course, that once more facts come to light, the Beech factors will turn out *not* to be satisfied. But until that happens, I decline to dismiss Paysys's allegations of general jurisdiction. Jurisdictional discovery is warranted.

## IV. SUBSTANTIVE ALLEGATIONS

### A. Contract Claims

To successfully plead a contract claim under New York law, a plaintiff must allege that a contract existed, that the contract's terms were violated, and that damages resulted from the violation.[29] Here, the Complaint easily clears these hurdles. Paysys has alleged the existence of a contract — *i.e.*, the License Agreement — and, if Paysys's version of events is accurate, Sema's 2004 assignment of its rights and liabilities to Atos caused Paysys harm. The point of contention is whether the License Agreement permitted the 2004 assignment.

---

[28] *See King County*, 712 F. Supp. 2d at 110 ("When applying the Beech test, establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.") (internal citations omitted).

[29] *See, e.g.*, *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, Nos. 14 Civ. 7091, 14 Civ. 7973, 2015 WL 221055 (S.D.N.Y. Jan. 15, 2015); *Diesel Props S.r.l. v. Grey Stone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Paysys thinks it did not; defendants think otherwise.

It would be premature to resolve this dispute now. The License Agreement plainly empowered Sema to "modify" the CardPac software.[30] The question, boiled down, is whether Sema was further empowered to grant *others* the right to modify the CardPac software. The "modifications" clause reads as follows:

> Subject to the terms of this Agreement, Sema shall have [the] right to make enhancements, alterations, additions, variations, or modifications to the source code of the Products and to the corresponding object code; to create new modules of the Products; and to License the Products (or to license enhancements, new modules, or derivative products thereof) to its customers solely within the Territory in such form as seems appropriate in its sole discretion.[31]

Even if it were unambiguous in every other respect, this clause is *at least* ambiguous as to the meaning of the term "Products." According to defendants, the word "Products" only refers to CardPac, and defendants' modification and sublicensing of *derivatives* of CardPac — which the License Agreement plainly allowed Sema to create — are not subject to the same restrictions.[32] Paysys disagrees. It maintains that "derivative works [were also]

---

[30] *See* Opp. Mem. at 24; 12(b)(6) Rep. at 2.

[31] License Agreement, Exhibit 2 to Declaration of Francis W. Ryan, in Support of Defendants' Motions to Dismiss.

[32] *See* 12(b)(6) Mem. at 8 ("The [License Agreement] unambiguously limits *any* restrictions on Defendants' licensing, sales, and development activities

-11-

intended to be subject to the license terms contained in the [License] Agreement."[33]

Both sides marshal strong interpretive arguments, drawing on other clauses of the License Agreement and other documents,[34] in support of their respective positions. Both of those positions are plausible — which is just another way of saying that the contract is ambiguous. It is black letter New York law that when "the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal."[35] The 12(b)(6) motion is therefore denied as to the contract claims.

### B. Conversion and Unfair Competition Claims

As an alternative to its contract theory, Paysys also brings claims for conversion and unfair competition. According to defendants, these claims should be dismissed as duplicative of Paysys's contract theory, because they are "based on

---

to a single product called CardPac.") (emphasis in original).

[33] Opp. Mem. at 25.

[34] For example, defendants' reply brief is peppered with phrases such as "read in context," and is replete with examples of how (in defendants' view) Paysys's interpretation of the "modification" provision is in tension with other clauses of the License Agreement. Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss Under Rule 12(b)(6) ("12(b)(6) Rep."), at 3. These arguments might well prevail — but if anything, they underscore that the License Agreement is ambiguous, and that the contract claim is therefore not amenable to summary dismissal.

[35] *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (internal citations omitted). *Accord id.* at 567-68 (collecting cases).

the same underlying facts."[36]  I disagree.  It is unclear from the face of the Complaint if the factual overlap is as extensive as defendants suggest.  But even assuming it is, that is no reason to dismiss Paysys's conversion and unfair competition claims now.  Alternative pleading is explicitly permitted by the Federal Rules of Civil Procedure.[37]  Furthermore, it is possible that no contract claim lies against the French defendants[38] — which in turn makes it possible that the conversion and unfair competitions claims, even if they *are* duplicative against Sema and Atos IT, are not duplicative against the French defendants.  In short, Paysys's conversion and unfair competition claims cannot be dismissed at this time.[39]

---

[36]  Defendants' Memorandum of Law in Support of its Motion to Dismiss on 12(b)(6) Grounds at 24.

[37]  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").  *See also Peterson v. Insurance Co. of N. Am.*, 40 F.3d 26, 32 n.3 (2d Cir. 1994) ("Under our system of notice pleading and pleading in the alternative, a party should plead all theories that [it] wishes to pursue.").

[38]  Paysys argues that the French defendants "are proper parties to the breach of contract claim because they have assumed the liabilities of Sema . . . and are asserted to be alter egos of Sema."  Opp. Mem. at 28.  The success of this argument turns on the same facts as the personal jurisdictional issue.  In other words, more facts are necessary to determine whether a contract claim lies against the French defendants.

[39]  Defendants have also argued that Paysys's conversion and unfair competition claims are time-barred.  *See* 12(b)(6) Rep. at 9-10.  This argument may eventually prevail as to one or both claims, but it turns on facts not yet known.  With respect to Paysys's conversion claim, the statute of limitations began to run

### C. Trade Secret Misappropriation Claim

Paysys has properly pleaded a trade secret misappropriation claim. Defendants' only serious argument as to this claim is that it is time-barred, because the alleged misappropriation occurred in 2004 — when Sema assigned its rights and liabilities under the License Agreement to Atos — which falls well outside the three-year statute of limitations. In response, Paysys argues that defendants have identified the wrong trigger date. In fact, "later violations may be recognized as [] separate acts of misappropriation[]" when a defendant continues "[to] keep[] the trade secret confidential and make[] use of [it to] its own commercial advantage."[40] Accordingly, Paysys asks for the opportunity "to take discovery on the issue of when and how the trade secrets were misappropriated"[41] — *i.e.*, whether

---

when a demand for return of property was made and refused. *See Marvel Worldwide v. Kirby*, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (applying New York law). With respect to Paysys's unfair competition claim, the statute of limitations began to run when Paysys's intellectual property was misappropriated. *See Sporn v. MCA Records*, 451 N.Y.S.2d 750, 751 (1st Dep't 1982). In neither case, then, can the statute of limitations analysis proceed in the absence of fact discovery. Moreover, in addition to arguing that defendants are wrong about the statutes of limitations having run, Paysys also argues that defendants should be estopped, on equitable grounds, from asserting statute of limitations defenses. This is also a factual question.

<sup>40</sup>  Opp. Mem. at 38. *See also Architectronics v. Control Systems, Inc.*, 935 F. Supp. 425, 433 (S.D.N.Y. 1996) ("If a defendant . . . keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the Statute of Limitations.").

<sup>41</sup>  Opp. Mem. at 39.

defendants continued to reap financial gain from the misappropriated information, by keeping it secret, after 2004. I agree. Once it comes to light how defendants used the trade secrets they allegedly misappropriated from Paysys, it may turn out that the misappropriation claim is time-barred. But I cannot conclude as much without the benefit of fact discovery.

### D. Copyright Claims

Because Paysys has failed to allege any infringing activity that took place in the United States, its domestic copyright claims — for direct infringement, as well as indirect and contributory infringement — fail as a matter of law.[42] Whether its foreign copyright claims are viable depends on propositions of foreign law that have not been briefed. Assuming, *arguendo*, that the foreign copyright claims are viable, this may not be the right venue for them. Indeed, defendants argue that the foreign copyright claims should be dismissed under the doctrine of *forum non conveniens*. I decline to rule on this issue until more is known about the relationship among the defendants. If Atos and/or Worldline is, indeed, the alter ego of Atos IT and Sema, that would pose a different question — under the usual *forum non conveniens* analysis[43] — than if Atos and Worldline are independent

---

[42] *See Kirtsaeng v. John Wiley & Sons*, 133 S.Ct. 1351, 1376 (2013) ("The Copyright Act, it has been observed time and again, does not apply extraterritorially.").

[43] *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (outlining a three-part test by which a court asks (1) if the plaintiff's choice of

foreign companies.  In the latter event, it is likely that defendants *forum non conveniens* argument would succeed, because the copyright claims — involving purely foreign law and foreign defendants — would have no "bona fide connection to the United States."[44]

## IV.  CONCLUSION

For the reasons set forth above, defendants' 12(b)(6) motion is GRANTED as to the domestic copyright claims,[45] DENIED as to the trade secret misappropriation, conversion, and unfair competition claims, and the Court reserves judgment on the contract claim and foreign copyright claims.  The Court also reserves judgment on defendants' 12(b)(2) motion.  Jurisdictional discovery is ordered, and the parties are directed to propose a joint discovery schedule.  A status

---

forum merits "deference," (2) if there are adequate "alternative forum[s]" in which to adjudicate the claims, and (3) the balance of "private and public interests").  In the instant case, there is no dispute that Paysys's designation of forum is not entitled to deference, and that adequate alternative forums — *i.e.*, the courts of the countries whose copyright laws have allegedly been violated — exist.  Paysys's main argument is that defendants should be prohibited from "split[ting] the [copyright] case in four," thereby delaying its resolution, "complicating" its substance, and "driv[ing] up costs for Paysys."  Opp. Mem. at 35.  The interest in efficient adjudication is certainly a valid one — but it could be outweighed by a court's general "reluctance to apply foreign law."  *Boosey & Hawkes Music Publ. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998).  More facts are needed.

[44]     *Iragorri*, 274 F.3d at 72.

[45]     As to the domestic copyright claim, leave to amend is granted, but only insofar as Paysys — bearing in mind the strictures of Rule 11 — can offer new facts that establish an infringing act that occurred within the United States.

conference is set for Wednesday, August 12 at 4:30 PM. The Clerk of the Court is directed to close Dkt. Nos. 51 and 58 — with leave to refile pending jurisdictional discovery.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 24, 2015

## - Appearances -

**For Plaintiff:**

Robert D. Owen, Esq.
Travis J. Mock, Esq.
Sutherland Asbill & Brennan LLP
1114 Avenue of the Americas, 40th Floor
New York, NY 10036
(212) 389-5000

**For Defendants:**

Leon Medzhibovsky, Esq.
Airina L. Rodrigues, Esq.
Francis W. Ryan, Esq.
Marc E. Miller, Esq.
Melissa A. Reinckens, Esq.
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4630