USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 14, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

PAYSYS INTERNATIONAL, INC.,                      :
                                                 :
                              Plaintiff,         :
                                                 :
              -v-                                :        14-cv-10105 (KBF)
                                                 :
ATOS SE, WORLDLINE SA, ATOS IT SERVICES :                 OPINION & ORDER
LTD.,                                            :
                                                 :
                              Defendants.        :
                                                 :
------------------------------------------------------------ :
                                                 :
ATOS SE, WORLDLINE SA, ATOS IT SERVICES :
LTD.,                                            :
                                                 :
                              Counterclaim       :
                              Plaintiffs,        :
              -v-                                :
                                                 :
PAYSYS INTERNATIONAL, INC. and FIRST             :
DATA CORPORATION,                                :
                                                 :
                              Counterclaim       :
                              Defendants.        :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

PaySys International, Inc. ("PaySys") commenced this action in December

2014 asserting various claims against defendants Atos SE ("Atos"), Worldline SA

("Worldline"), and Atos IT Services Ltd. ("Atos IT") (collectively, "Defendants"), that

stem from a 1988 license agreement entered into by PaySys's predecessor, Credit

Card Software, Inc. ("CCSI"), and Sema Group SA, the predecessor of certain of the

Defendants.  The agreement provided Sema Group SA with a license for CardPac,

software that CCSI created in the 1980's and which PaySys continues to use in modified form.

The operative Second Amended Complaint ("SAC")—which PaySys filed after certain of its previously asserted claims were dismissed—alleges ten causes of action, including four foreign copyright claims, New York state law claims for breach of contract, unfair competition, conversion, replevin and misappropriation of trade secrets, and a Florida state law claim for misappropriate of trade secrets. These claims rest on PaySys's allegations that Defendants have, over the course of several ownership changes and reorganizations, extensively violated the restrictions in the license agreement by, <u>inter alia</u>, improperly assigning the CardPac license to entities other than those identified in the agreement, creating an unauthorized open network of software that includes PaySys's source code and trade secrets, granting sublicenses forbidden by the agreement, and failing to report and pay all amounts owed to PaySys.  Discovery is currently ongoing and trial is scheduled to commence on April 17, 2017.

Pending before the Court is Defendants' motion for partial summary judgment seeking dismissal of PaySys's claims for unfair competition, conversion and replevin.  (ECF No. 127.)  Defendants seeks judgment as a matter of law with respect to each claim on multiple independent grounds, including that, <u>inter alia</u>, the claims are time-barred, preempted by the Copyright Act, and merely duplicative of PaySys's breach of contract claim.  For the reasons set forth below, the Court concludes that Defendants are entitled to judgment as a matter of law with respect

to PaySys's unfair competition, conversion and replevin claims because each is time-barred under New York law.  Accordingly, Defendants' motion for partial summary judgment is GRANTED, and the claims at issue in this motion are dismissed with prejudice.

I.   BACKGROUND[1]

A.   Factual Background

1.   Parties

Plaintiff PaySys International, Inc. was founded in 1981 as Credit Card Software, Inc., and adopted its current name in 1995.  (Atos's 56.1 ¶ 7, ECF No. 129; PaySys's 56.1 Cstmt. ¶ 7, ECF No. 155.)[2]  Since 2001, PaySys has been a wholly-owned subsidiary of counterclaim defendant First Data Corporation ("FDC").  (PaySys's 56.1 Cstmt. ¶ 8.)

Defendant Atos SE is a French public limited company, of which defendants Worldline SA and Atos IT Services Ltd. are subsidiaries.  (Answer ¶¶ 10-11, 14, ECF No. 108; see also PaySys's 56.1 Cstmt. ¶¶ 17-18.)  Defendants compete with PaySys in the market for credit card and payment processing software in certain areas of the world.  (PaySys's 56.1 Cstmt. ¶ 9.)  The parties' papers leave unclear

---

[1] The Court here recites only that background which is pertinent to resolution of defendants' motion for partial summary judgment as to PaySys's claims for unfair competition, conversion, and replevin.

[2] The notation "Atos's 56.1" refers to defendants' statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 129.)  This decision relies only on those facts that PaySys did not dispute with citations to admissible evidence in its Rule 56.1 counterstatement (ECF No. 155) (referred to herein as "PaySys's 56.1 Cstmt.").  See Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Thus, to the extent that PaySys makes factual assertions unsupported by any citation to the record (see Pl.'s Opp. Mem. at 15-25, ECF No. 156), those assertions are disregarded.

the precise relationship between the Defendants (and their corporate history), as well as which entity or entities may properly be deemed to be bound by the provisions of the license agreement(s) underlying this suit.

2.   The License Agreement

The parties' predecessor entities—CCSI and Sema Group SA—entered into a Software Acquisition Agreement (the "SAA"), dated October 31, 1988, and entered into a Confidential Settlement Agreement (the "CSA"), dated April 27, 2001, that confirmed and ratified the SAA and further amended the SAA's terms.  (PaySys's 56.1 Cstmt. ¶¶ 10-17, 22; see also Medzhibovsky Decl., Exs. 1 ("SAA"), 4 ("CSA"), ECF No. 130.)  The parties' predecessors also executed two amendments to the SAA, dated December 28, 1988, and March 1, 1990, respectively.  (PaySys's 56.1 Cstmt. ¶¶ 11-12; see also Medzhibovsky Decl., Exs. 2, 3.)[3]  Although the SAA and the subsequent amendments thereto contain numerous provisions, the Court here only details those aspects of the contractual relationship necessary to lay the proper framework for this motion; in light of the Court's resolution of Defendants' motion on statute of limitations grounds, the parties' disputes over the meaning and scope of the rights conferred in the agreements are largely an aside.

Pursuant to the SAA, CCSI sold Sema Group SA and its "Affiliates" rights to, inter alia, the credit card and payment processing software known as CardPac Transaction Management System ("CardPac") and "all Enhancements and Special

---

[3] CCSI and Sema Group SA also entered into a memorandum agreement, dated October 24, 1990, that further modified the SAA.  (PaySys's 56.1 Cstmt. ¶ 12; Owen Decl., Ex. A, ECF No. 157.)  Atos IT's predecessor, Sema Group PLC, had itself also become a party to the SAA through the first amendment to the SAA, which was made effective October 31, 1988.  (Atos's 56.1 ¶¶ 11, 18.)

Enhancements thereto." (PaySys's 56.1 Cstmt. ¶ 19, see also SAA § 1(i).) Pursuant to § 2 of the SSA, which is titled "Sale of Rights," CCSI sold to Sema and its Affiliates "an exclusive, royalty-free right to use, and to grant Licenses to use [CardPac] Products solely within the Territory" as defined in the SAA for the initial ten-year period from the effective date of the SAA. (PaySys's 56.1 Cstmt. ¶ 20; see also SAA § 2(a).)[4] Section 2 further provided that, after expiration of the initial ten-year period, Sema would, without any further payment or obligation to CCSI, have a "perpetual non-exclusive right to incorporate all or any portion of the [CardPac] Products . . . into products developed, marketed, supplied, installed and/or supported by or for Sema within the Territory." (PaySys's 56.1 Cstmt. ¶ 20; see also SAA § 2(b).) Pursuant to § 8 of the SAA, Sema Group SA had the right—subject to certain limitations—to "make enhancements, alterations, additions, variations or modifications to the source code of the [CardPac] Products and to the corresponding object code," to "create new modules or derivative products of the [CardPac] Products," and to "License the [CardPac] Products . . . to its customers solely within the Territory in such form as [Sema] deems appropriate in its sole discretion." (PaySys's 56.1 Cstmt. ¶ 21; see also SAA § 8.) Section 8 further provided that CCSI would "have no right to any such enhancements, alterations, additions, or modifications to the source code, object code or user documentation, or to such new modules or derivative products." (PaySys's 56.1 Cstmt. ¶ 21; see also SAA § 8.)

---

[4] The CSA amended the defined term "Territory" to include the "entire world other than North America . . ., South America, Central America and the Caribbean Islands." ((PaySys's 56.1 Cstmt. ¶ 27; CSA § 6(b).)

As stated above, the SAA was last modified through the CSA, which was executed between PaySys, Sema SA and Sema plc on April 27, 2001.  Pursuant to § 5(b) of the CSA, and in reliance on Sema's representation that it had "not granted or entered into any license, contract, agreement, authorization or other arrangement pursuant to which the [CardPac] Products or derivatives thereof (including without limitation CardLink) have been or may be installed on central processing units" in the "Territory," PaySys confirmed and ratified "all licenses or other authorizations to Use the Products or derivatives thereof (including without limitation CardLink) granted by Sema or its Affiliates to third parties on or before the date of" the CSA. (PaySys's 56.1 Cstmt. ¶ 23, CSA § 5(b).)  In § 5(d) of the CSA, PaySys agreed that the "perpetual, non-exclusive rights granted to Sema under [§ 2(b) of the SAA] include, without limitation, the rights to: (x) grant licenses to Use all or a portion of the [CardPac] Products . . . or derivatives thereof . . . within the Territory; and (y) itself Use or operate all or a portion of the [CardPac] Products . . . or derivatives thereof . . . for any purpose whatsoever, within the Territory."  (PaySys's 56.1 Cstmt. ¶ 24, CSA § 5(d).)  In § 5(e), PaySys acknowledged and agreed that "Sema's rights under [§ 8 of the SAA] include the right to port the Products or derivatives thereof . . . to any hardware or operating system platform . . ., and Sema is entitled to Use or to grant licenses to Use ported Products or derivatives solely within the Territory."  (PaySys's 56.1 Cstmt. ¶ 25, CSA § 5(e).)  The CSA also amended the parties' December 28, 1988 amendment to add a provision stating that PaySys had "no right to terminate this Agreement, the rights granted herein or any license

granted by Sema pertaining to the Products or derivatives thereof for any reason" and stated that "damages shall be PaySys's exclusive remedy in the event of a breach by Sema or any of Sema's Affiliates." (PaySys's 56.1 Cstmt. ¶ 28, CSA § 6(e).)

          3.    <u>The Parties' Subsequent Activities</u>

Defendant Atos SE, then known as Atos Origin, acquired Sema Ltd. (which had changed its name from Sema plc in 2001) on January 22, 2004. (Atos's 56.1 ¶ 14; <u>see also</u> Answer ¶ 14(c).) Atos Origin announced the acquisition of Sema Ltd. in a September 23, 2003 press release on its website, in its 2003 Annual Report, and in its 2004 Annual Report. (PaySys's 56.1 Cstmt. ¶ 15.) On December 31, 2003, the various Atos Origin businesses relating to card payment processing and electronic transactional services were merged into a single organization, Atos Worldline, which since 2013 has existed as defendant Worldline SA. (PaySys's 56.1 Cstmt. ¶¶ 16-17; <u>see</u> Medzhibovsky Decl., Exs 7, 8.) Subsidiary operating entities of Atos SE and Worldline SA have entered into agreements with third-party customers concerning defendants' credit card and payment processing software products." (PaySys's 56.1 Cstmt. ¶ 43.)

As stated above, PaySys has been a wholly-owned subsidiary of FDC since 2001. (PaySys's 56.1 Cstmt. ¶ 8.) The "First Data Competitive Intelligence Team" prepared a "Competitor Analysis" of Atos Origin that was based on publicly available information as of 2007-2009. (PaySys's 56.1 Cstmt. ¶ 29.) In relevant part, the "Competitor Analysis" document states:

> In 2003, Atos Origin bought Sema Group from French card producer Schumberger [sic].  With operations in the UK, France, Italy, Spain and Asia Pacific, Sema added significant capability to Atos Origin's different service lines.  In a bid to coordinate and rationalize processing, Atos Worldline was set up in 2004, with the mission to regroup all of Atos Origin's card capabilities in one Europe-wide company. . . .  [Atos Origin] sees that Asia is a platform where Worldline could generate organic growth and likewise see initial results within Asia, specifically China.

(PaySys's 56.1 Cstmt. ¶ 29.)  On or about April 2009, FDC hired Vincent Roland, Atos Worldline's former chief executive officer of its Northern Europe business, as senior vice president of FDC's card issuing and merchant acquiring operations in Europe, the Middle East, and Africa.  (PaySys's 56.1 Cstmt. ¶ 30.)

B.   Procedural History

PaySys initiated this action by filing a Verified Complaint against defendants Atos SE and Worldline SA on December 23, 2014.  (ECF No. 1.)  The action was initially assigned to the Hon. Shira A. Scheindlin.  On March 31, 2015, PaySys filed a Verified Amended Complaint that added Atos IT Services Ltd. and Sema SA as defendants.  (ECF No. 24.)[5]  Defendants moved to dismiss the Verified Amended Complaint pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6) on May 1, 2015.  (ECF Nos. 52, 59.)  In an Opinion & Order issued on July 24, 2015, Judge Scheindlin dismissed PaySys's domestic copyright claims, but denied Defendants' motion as to all other claims.  (ECF No. 73.)  Judge Scheindlin noted Defendants' argument that the conversion and unfair competition were time-barred, but stated that the Court

---

[5] Sema SA was again excluded as a defendant in the subsequently filed SAC.

could not yet issue a ruling because that question turned on facts requiring further development.

On December 10, 2015, PaySys filed the operative Verified Second Amended Complaint alleging ten claims for (1) breach of contract, (2) trade secret misappropriation under New York law, (3) trade secret misappropriation under Florida law, (4) copyright infringement under French law, (5) copyright infringement under Thai law, (6) copyright infringement under Belgian law, (7) copyright infringement under Chinese law, (8) conversion under New York law, (9) unfair competition under New York law, and (10) replevin under New York law. (SAC, ECF No. 103.)  Defendants answered and filed counterclaims seeking declaratory judgment as to certain of PaySys's claims (ECF No. 108), which PaySys and FDC answered on March 21, 2016 and March 28, 2016, respectively (ECF Nos. 112, 114).

PaySys supports its conversion claim by alleging, <u>inter alia</u>, that Defendants' "dominion and control over Plaintiff's Software . . . have precluded Plaintiff from using its Software to its competitive advantage and have deprived Plaintiff, in whole or in part, of the value of its own Software," including the right to "process payment transactions for customers throughout the world" and to "sell licenses to use the Software to other entities."  (SAC ¶ 200.)  PaySys further alleges that "Defendants have intentionally stolen and converted PaySys's secret, confidential and proprietary Software, [and] destroyed the secrecy and confidentiality of that Software."  (SAC ¶ 201.)  PaySys alleges that Defendants are in possession of

9

physical media and objects belonging to it in derogation of and to the exclusion of PaySys's rights and competitive advantage.  (SAC ¶ 202.)  PaySys similarly supports its replevin claim by alleging that it has a superior right to possess software in Defendants' possession and that its demand for return of the software has been met with refusal.  (SAC ¶¶ 216-19.)

PaySys supports its unfair competition claim by alleging that "Defendants are selling licenses and related services based on PaySys's Software without securing the necessary intellectual property rights and consents from PaySys" and that "Defendants have knowingly misappropriated confidential and proprietary information for use in their businesses and have engaged in unfair competition with PaySys."  (SAC ¶¶ 209, 212.)  PaySys alleges that Defendants' misappropriation of its confidential and proprietary information has been occurring since the "assignment from Sema to Atos in 2004," from which time Defendants "have themselves and allowed others to use the PaySys Trade Secrets without authorization."  (SAC ¶ 167.)

On April 12, 2016, this action was transferred to the undersigned.  On May 26, 2016, Defendants filed the pending motion for partial summary judgment, seeking dismissal of PaySys's unfair competition, conversion and replevin claims on several independent grounds.  (ECF No. 127.)[6]  PaySys opposed the motion on June 13, 2016.  (ECF No. 156.)  Defendants filed their reply on June 23, 2016.  (ECF No. 172.)

---

[6] On June 20, 2016, Defendants also moved for partial summary judgment as to PaySys's claims for misappropriation of trade secrets under New York and Florida law.  (ECF No. 163.)  Briefing on that motion has not yet been completed.

II.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (internal quotation mark omitted).

III.    DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law with respect to PaySys's state law claims for unfair competition, conversion, and replevin on several grounds, including, inter alia, that each of those claims is time-barred by

11

the statutes of limitations applicable under New York law.  As explained below, the Court agrees, and therefore dismisses each of these claims.[7]

Before addressing the merits of defendants' limitations-based defenses, the Court must first address PaySys's contention that New York law does not "necessarily" govern[ ] its tort claims" because "such a determination ought to await the conclusion of fact discovery."  (Pl.'s Opp. Mem. at 4-5.)  PaySys's attempt to forestall the Court's resolution on the merits fails for several reasons.  First, PaySys does not identify any alternative jurisdiction whose law PaySys believes more appropriately governs any of these claims.  Second, the SAC explicitly pleads two of the claims at issue—those for conversion and replevin—under New York law.  (SAC ¶¶ 198-206, 216-221.)  Third, in its opposition to defendants' motion to dismiss the Amended Complaint, PaySys previously asserted—and Judge Scheindlin accepted— that New York law governed its conversion and unfair competition claims (see ECF Nos. 68, 73), yet it has failed to explain why it did not raise the choice of law issue at that time.  See Pegram v. Herdrich, 530 U.S. 211, 228 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); Intellivision v. Microsoft Corp., 784 F. Supp. 2d 356, 364 (S.D.N.Y. 2011), aff'd, 484 F. App'x 616 (2d Cir. 2012) (summary order).  It is thus clear that PaySys's choice of law argument is merely a tactic to delay the Court's consideration of defendants' statute of limitations defense on the merits.  Accordingly, New York

---

[7] Because the Court resolves Defendants' motion on statute of limitations grounds, the Court does not reach the other grounds raised in Defendants' motion.  The Court notes, however, that at least some of these additional independent grounds also appear to have merit.

law—including the applicable limitations periods—govern each of the claims at issue on this motion.

    A.    <u>Statute of Limitations Legal Standards</u>

        1.    <u>Unfair Competition</u>

"'The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another.'" <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (quoting <u>Saratoga Vichy Spring Co. v. Lehman</u>, 625 F.2d 1037, 1044 (2d Cir. 1980)).  The doctrine is "broad and flexible" and "encompasses an incalculable variety of illegal practices."  <u>Id.</u> at 208-09.  Under New York law, "'[t]he statute of limitations for an unfair competition claim based on misappropriation of another's labors or expenditures is three years.'" <u>Mahmood v. Research in Motion Ltd.</u>, No. 11 Civ. 5345 (KBF), 2012 WL 242836, at *4 (S.D.N.Y. Jan. 24, 2012) (quoting <u>Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.</u>, 126 F. App'x 507, 509 (2d Cir. 2005) (summary order)).  "The baseline for measuring the commencement of the statute of limitations is when plaintiff's claims accrued." <u>Id.</u>

        2.    <u>Conversion and Replevin</u>

"New York defines conversion as the 'unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'" <u>Marvel Worldwide, Inc. v. Kirby</u>, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (quoting <u>Meese v. Miller</u>, 79 A.D.2d 237, 242 (4th Dep't 1981)).  "Replevin is an action to 'try the right to possession of a chattel.'" <u>Press Access LLC v. 1 800 Postcards, Inc.</u>, No.

11 Civ. 1905 (KBF), 2012 WL 4857547, at *1 (S.D.N.Y. Oct. 9, 2012) (quoting N.Y. C.P.L.R. § 7101).  "A cause of action in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." Dore v. Wormley, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) (quotation marks omitted).

The statute of limitations for claims for conversion and replevin is three years, which begins to run when the alleged wrongful possession occurred.  Daisley v. FedEx Ground Package Sys., Inc., 376 F. App'x 80, 81 (2d Cir. 2010) (summary order) (citing N.Y. C.P.L.R. § 214(3)); Ferring B.V. v. Allergan, Inc., 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013).  Where the party in possession is alleged to have obtained possession unlawfully or in bad faith, "the statute of limitations for conversion and replevin automatically begins to run . . . even if the true owner is unaware the chattel is missing." Grosz v. Museum of Modern Art, 772 F. Supp. 2d 473, 481-82 (S.D.N.Y.), aff'd, 403 F. App'x 575 (2d Cir. 2010) (summary order); accord Dore, 690 F. Supp. 2d at 183.  In contrast, where the party in possession is not alleged to have acquired the property wrongfully (e.g. was a bona fide purchaser of the property), such claims do not accrue until the occurrence of a demand for return of the property and the possessor's refusal.  Ferring, 932 F. Supp. 2d at 510; see Grosz v. Museum of Modern Art, 403 F. App'x 575, 577 (2d Cir. 2010) (summary order) (citing Kunstsammlungen Zu Weimar v. Elicofon, 678 F.2d 1150, 1161 (2d Cir. 1982)).

3.    Equitable Tolling

"[U]nder New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Baiul v. NBC Sports, No. 15-cv-9920 (KBF), 2016 WL 1587250, at *11 (S.D.N.Y. Apr. 19, 2016). "[E]quitable tolling of a statute of limitations is a 'rare remedy to be applied in unusual circumstances.'" Mahmood, 2012 WL 242836, at *5 (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). "'To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time.'" Id. (quoting Smalldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001)).

B.    Analysis

Defendants argue that they are entitled to judgment as a matter of law with respect to PaySys's unfair competition, conversion and replevin claims because the statute of limitations for each claim began to run in 2004, approximately ten years before PaySys commenced this action. In a July 24, 2015 Opinion & Order, Judge Scheindlin denied Defendants' Rule 12(b)(6) motion to dismiss PaySys's unfair competition and conversion claims (as alleged in the prior Amended Complaint), stating in a footnote that the statute of limitations analysis could not proceed in the absence of fact discovery. PaySys Int'l v. Atos SE, No. 14 Civ. 10105(SAS), 2015 WL 4533141, at *4 n.39 (S.D.N.Y. July 24, 2015). Although fact discovery remains

ongoing, discovery has been proceeding since October 14, 2015 (see ECF No. 91), and document discovery is set to close shortly, on July 22, 2016 (see ECF No. 174).

PaySys opposes Defendants' motion on the basis that it remains premature because the parties have only engaged in a limited amount of written discovery thus far—with much discovery still to be taken—and because PaySys "believes that deception and concealment will serve as a basis for equitable tolling and/or equitable estoppel with regard to Defendants' limitations-based defenses." (Pl.'s Opp. Mem. at 7-9.)[8]  As explained below, the Court concludes that the claims at issue are time-barred because they accrued no later than 2004, and PaySys has failed to raise a triable issue of fact with respect to equitable tolling.[9]

At the outset, it is worth observing that there is much that PaySys concedes—or at the very least does not directly dispute—in its opposition.  First, PaySys does not challenge Defendants' argument that, assuming the claims at issue are governed by New York law (which the Court has determined are so governed), a three-year statute of limitations period applies to each claim.  Second, PaySys does not directly challenge Defendants' (well-supported) contention that the conduct causing PaySys's unfair competition, conversion and replevin claims to accrue— namely, Atos Origin's acquisition of Sema (PaySys's 56.1 Cstmt. ¶¶ 14-15; see SAC ¶ 167)—occurred by January 2004, more than ten years before PaySys commenced

---

[8] As discussed further below, PaySys has not filed an affidavit or declaration pursuant to Rule 56(d) in support of this argument.

[9] The Court observes that PaySys's opposition brief does not advance any arguments as to why a triable issue of fact remains with respect to its replevin claim.  (See Pl.'s Opp. Mem. at 4-25.) Rather, PaySys's brief entirely ignores this claim.  Defendants' motion for summary judgment as to PaySys's replevin claim is therefore also granted on the basis that it is unopposed.

this action.  Nor does PaySys dispute that its parent, FDC, had knowledge, including based on FDC's own internal documents, that the alleged conduct supporting these tort claims began at least as early as 2004.  (PaySys's 56.1 Cstmt. ¶¶ 29-30.)  Instead, PaySys argues only that Defendants' deception and concealment will serve as a basis to equitably toll the applicable limitations periods and that such issues cannot be properly analyzed prior to the completion of fact discovery.  Neither of these purported grounds for denying Defendants' motion has merit.

First, PaySys has failed, on the existing record, to raise a triable issue of fact as to whether it will be entitled to rely on equitable tolling or estoppel.  In attempting to raise a triable issue, PaySys states, without any citation to the record, that it "has uncovered deception, concealment, and flagrant non-compliance with notification and audit obligations by Defendants again and again, despite PaySys's exercise of due diligence to protect its rights" that "will serve as a basis for equitable tolling and/or equitable estoppel."  (Pl.'s Opp. Br. at 8.)  PaySys further asserts—again without any citation to the record—that "[a]s but one example, PaySys has learned of over a dozen independent violations of Defendants' affirmative notice obligations under the APS agreement, when notice, placement of an order, shipment by PaySys of a copy of the APS module were each conditions precedent for any sublicense/delivery by Sema of the APS module."  (Pl.'s Opp. Br. at 8.)  PaySys contends that these violations of the license agreement preclude it from being deemed to have had notice of its claims.

PaySys's vague assertions are insufficient to raise a triable issue of fact. PaySys cannot defeat a summary judgment motion with conclusory allegations lacking any citation to—or basis in—the record before the Court.  Rather, to defeat the motion, PaySys must set out specific facts showing the existence of a triable fact.  <u>Wright</u>, 554 F.3d at 266 ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." (quotation marks omitted)).  Furthermore, even if PaySys's contentions had at least some minimal basis in the record, Defendants' purported breach of their notice obligations does not demonstrate that they separately induced PaySys through fraud, misrepresentation or deceit to not file a timely action.  Under New York law, the same acts of non-disclosure cannot underlie both PaySys's causes of action and the argument supporting equitable tolling and/or estoppel.  <u>See</u> <u>Bisson v. Martin Luther King Jr. Health Clinic</u>, 399 F. App'x 655, 656 (2d Cir. 2010) (summary order) (citing <u>Ross v. Louise Wise Services, Inc.</u>, 8 N.Y.3d 478, 491 (2007)); <u>Tenamee v. Schmukler</u>, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 2006).  PaySys has failed to draw an adequate connection between Defendants' alleged non-disclosure and its inability to timely file these claims within the limitations period.  It has not set forth any facts supporting an inference that it acted with reasonable diligence.

18

As discussed above, PaySys also argues that the pending motion should, at the very least, be denied as premature because further discovery is necessary to raise a triable issue with respect to the applicability of equitable tolling and/or estoppel.  PaySys's last ditch effort to stave off a ruling on Defendants' limitations-based defenses similarly fails for two reasons.

First, PaySys has not invoked the proper procedural mechanism to make this argument.  When a non-movant seeks to argue that it requires further discovery or other information to allow it to present facts essential to justify its opposition to a motion for summary judgment, the proper remedy is to submit an affidavit or declaration pursuant to Rule 56(d).  <u>Gene Codes Forensics, Inc. v. City of New York</u>, 812 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) ("[I]t is well-settled that a party seeking additional discovery under former Rule 56(f) must file an affidavit in support of its request for discovery."); <u>see</u> Fed. R. Civ. P. 56(d).  A Rule 56(d) affidavit must describe: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful."  <u>Gualandi v. Adams</u>, 385 F.3d 236, 244 (2d Cir. 2004).  Here, despite the Court's specific admonition that a Rule 56(d) affidavit was the means by which a party should alert the Court that it believes that a summary judgment motion is premature,[10] PaySys did not follow the Court's instructions.  This failure alone is a

---

[10] At the status conference held on April 29, 2016, the Court stated that if a summary judgment motion was premature, "the way you would have to alert me to that would be with an appropriate Rule 56(d) motion.  If it just happens to be early in the discovery and nobody makes a 56(d) motion we'll go ahead and decide it."  (4/29/16 Tr. at 11:4-8, ECF No. 124.)

sufficient basis to reject PaySys's purported need for additional discovery. Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) ("[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."); see Gurary v. Winehouse, 190 F.3d 37, 43-44 (2d Cir. 1999).

Second, even if the Court excused PaySys's failure to file a Rule 56(d) affidavit, PaySys has nevertheless made an insufficient showing that additional discovery could reasonably lead to a different outcome. PaySys has not articulated any reasonable basis—beyond mere conjecture—to believe that further discovery will reveal information material to Defendants' limitations-based defenses or to its equitable tolling theory. Paddington Partners, 34 F.3d at 1138 ("A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered."). PaySys has therefore made an inadequate showing to justify holding resolution of the motion over until a later stage.

IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment as to PaySys's claims for unfair competition, conversion and replevin is GRANTED. Accordingly, those claims are dismissed with prejudice.

The Clerk of Court is directed to close the motion at ECF No. 127.

SO ORDERED.

Dated:      New York, New York
            July 14, 2016

_____
KATHERINE B. FORREST
United States District Judge