UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

PAYSYS INTERNATIONAL, INC.,

                              Plaintiff,

           -v-                                                  14-cv-10105 (KBF)

ATOS SE, WORLDLINE SA, ATOS IT                                 OPINION & ORDER
SERVICES LTD.,

                              Defendants.

------------------------------------------------------------ :

ATOS SE, WORLDLINE SA, ATOS IT
SERVICES LTD.,

                              Counterclaim
                              Plaintiffs,
           -v-

PAYSYS INTERNATIONAL, INC. and FIRST
DATA CORPORATION,

                              Counterclaim
                              Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 7, 2017

KATHERINE B. FORREST, District Judge:

    This Memorandum Decision & Order resolves three motions in this

protracted litigation between PaySys International, Inc. ("PaySys") and defendants

Atos Se, Worldline SA ("Worldline") and Atos IT Services Ltd. ("Atos IT")

(collectively, "Atos") regarding the rights to CardPac, a computer program owned by

PaySys.

Now before the Court are PaySys's motion to voluntarily dismiss the complaint with prejudice (ECF No. 275), Atos's motion for summary judgment (ECF No. 280) and PaySys's motion for partial summary judgment (ECF No. 286). For the reasons set forth below, the Court hereby GRANTS PaySys's motion for voluntary dismissal and dismisses the action with prejudice under Federal Rule of Civil Procedure 41(a)(2), subject to the terms set forth herein. The motions for summary judgment at ECF Nos. 280 and 286 are hereby terminated as moot.

I.  BACKGROUND

This case began in late 2014. After nearly three years of litigation and several rulings on dispositive motions—the history of which has been recounted elsewhere[1]—this case was set to proceed to trial on June 5, 2017 on the only remaining claims: PaySys's first cause of action for breach of contract (see ECF No. 103 ("SVAC") ¶¶ 156-62) and Atos's second, fourth and fifth counterclaims for declaratory judgments concerning the parties' contract (see ECF No. 108 ("Answer") ¶¶ 51-53, 57-59, 60-62).

At issue here is a license agreement first executed in 1988 and later amended in 1990 and 2001 (the Software Acquisition Agreement, or "SAA"), pursuant to which PaySys's predecessor licensed Atos certain rights to a computer program known as "CardPac." PaySys alleges that Atos breached its agreements with PaySys by (1) granting rights to licensees in violation of the agreements' territorial

---

[1] See, e.g., PaySys Int'l, Inc. v. Atos Se, No. 14-CV-10105 (KBF), 2016 WL 7181950, at *1 (S.D.N.Y. Dec. 8, 2016); PaySys Int'l, Inc. v. Atos Se, No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016); PaySys Int'l v. Atos Se, No. 14 CIV. 10105 SAS, 2015 WL 4533141, at *1 (S.D.N.Y. July 24, 2015).

restrictions, and (2) selling a software known as "APS" and its derivatives without following certain contractual procedures, including paying certain fees to PaySys. (SVAC ¶¶ 156-62.)  Atos, in turn, contends that no such breach occurred (Answer ¶¶ 51-53 (second cause of action)), that PaySys lacks ownership rights in certain programs (id. ¶¶ 60-62 (fifth cause of action)) and that the SAA, as amended, confers no audit rights on PaySys (id. ¶¶ 57-59 (fourth cause of action)).

The 2001 amendment to the SAA (the 2001 Confidential Settlement Agreement, or "CSA") contains a fee-shifting provision, Section 6(e).  Section 6(e) provides that:

> In the event of litigation between the parties with respect to any claim that [Atos's predecessor] or any of [its] [a]ffiliates has committed a territorial violation, the prevailing party shall be entitled to an award of its reasonable attorneys' fees.

(ECF No. 130 Ex. 4 § 6(e) ("Section 6(e)").)

The Court now must decide three dispositive motions filed on the eve of the April 7, 2017 summary judgment deadline:  PaySys's motion to voluntarily dismiss the complaint with prejudice (ECF No. 276) and two dueling summary judgment motions seeking dismissal of all, in the case of Atos's motion (ECF No. 280), or part, in the case of plaintiff's motion (ECF No. 286), of PaySys's remaining contractual claim.

The parties' positions with regard to these motions are set forth not only in their respective briefs, but also in various letter submissions filed in response to the

Court's inquiries.[2]  PaySys seeks to voluntarily dismiss the case with prejudice and, as a condition of dismissal, agrees to grant Atos "an unqualified covenant not to sue with an unrestricted, perpetual, assignable global license to CardPac and CardPac derivatives with no further obligations to PaySys."  (ECF No. 309 at 2 (alterations omitted); see also ECF No. 276 at 6-8 (discussing offer to grant license); ECF No. 303 at 4 (same).)  Atos consents to a dismissal on these terms, provided the Court additionally finds that Atos, as the "prevailing party" under Section 6(e), is entitled to its reasonable attorneys' fees.  (ECF No. 296; ECF No. 306 at 5; ECF No. 312 at 6-8.  The parties agree that granting PaySys's 41(a)(2) motion in any form—that is, regardless of whether the Court awards Atos attorneys' fees—moots the parties' pending motions for summary judgment and defendants' remaining counterclaims.  (ECF No. 303 at 4; ECF No. 306 at 5.)  The Court therefore considers PaySys's Rule 41(a)(2) motion first.

II.  DISCUSSION

PaySys's motion under Rule 41(a)(2), and Atos's conditional consent thereto, raises two key questions:  First, does PaySys's voluntary dismissal of its contractual claim render Atos the "prevailing party" with regard to "any claim that [Atos] . . . committed a territorial violation," such that Atos is entitled to an award of its reasonable attorneys' fees under Section 6(e) of the parties' contract?  Second, if so, may this court condition approval of PaySys's Rule 41(a)(2) motion on the award of

---

[2] See ECF Nos. 296 (Atos April 11, 2017 letter), 298 (PaySys April 11, 2017 letter), 303 (PaySys April 12, 2017 letter), 306 (Atos April 14, 2017 letter), 309 (PaySys April 17, 2017 letter).

reasonable attorneys' fees to Atos?  For the reasons set forth below, the Court

answers both questions in the affirmative.

A.      Interpretation of the Term "Prevailing Party"

In deciphering what the parties intended by the term "prevailing party," the

Court turns to well-established principles of contractual interpretation.  In the

absence of any alleged ambiguity or contrary intent, contractual terms must be

accorded their plain meaning.  E.g., Law Debenture Trust Co. of N.Y. v. Maverick

Tube Corp., 595 F.3d 458, 467-68 (2d Cir. 2010) ("Thus, a written agreement that is

complete, clear and unambiguous on its face must be interpreted according to

the plain meaning of its terms, without the aid of extrinsic evidence") (alterations,

quotation marks and internal citations omitted); R/S Assocs. v. N.Y. Job Dev. Auth.,

771 N.E.2d 240, 242 (N.Y. 2002) (same).  An ambiguity does not exist merely

because a term is undefined, as courts in such cases will treat "an established

definition provided by state law . . . as a default rule, and that definition will control

unless the parties explicitly indicate, on the face of their agreement, that the term

is to have some other meaning."  Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d

608, 617-18 (2d Cir. 2001).  If "neither the contract nor state law defines a disputed

term," courts should then turn to federal law for guidance, provided the "contracting

parties use terms and concepts that are firmly rooted in federal law, and where

there are no explicit signals to the contrary."  Id. at 618.

Here, the SAA expressly states that it "shall be governed by and construed in

accordance with the laws of the United States and of the State of New York."  (ECF

No. 130 Ex. 1 § 17(a).)  The Court understands this provision to mean that the contract is governed by New York law—as the Court has previously held (see ECF No. 232 at 3), as PaySys has insisted (see ECF No. 345 at 4-6) and as Atos has previously intimated (see Answer ¶ 27)—and that federal law serves as a backdrop where state law authority is lacking.  Put differently, the Court reads the parties' contract as perfectly tracking the interpretive default rule set forth in Hugo Boss. New York's established definition of the term "prevailing party," therefore, should govern the dispute at hand.[3]

The Court also recognizes, however, that other courts in this district have turned to federal law to define the term "prevailing party" in New York-based contracts, see, e.g., Great Earth Int'l Franchising Corp. v. Milks Dev., Inc., No. 01-CV-141 (AKH), 2004 WL 2049268, at *2 (S.D.N.Y. Sept. 13, 2004), and the parties' initial briefing on this motion focused on case law analyzing the federal law interpretation of the term (see ECF No. 312 at 7-8; ECF No. 327 at 2-3).  Though the Court believes New York law ought to govern this issue, it matters little whether the parties intended New York or federal definitions to apply, as Atos is the "prevailing party" under either framework.

---

[3] The parties' briefing on PaySys's Rule 41(a)(2) motion initially focused on the federal law interpretation of the term "prevailing party."  (See ECF Nos. 312, 327.)  The Court issued a Proposed Memorandum Decision & Order regarding PaySys's motion on June 13, 2017, in which the Court found that the parties' agreement (ECF No. 130, Ex. 4) is governed by New York law and analyzed Section 6(e) of the parties' contract accordingly.  Because neither party had considered New York's treatment of the term "prevailing party" in its briefing or letters concerning PaySys's Motion to Dismiss the Complaint Voluntarily (ECF No. 275), the Court directed the parties to provide any objections and comments with regard to that aspect of the Proposed Memorandum Decision & Order. (ECF No. 342.)  PaySys's objections were filed on June 28, 2017 (ECF No. 345) and are addressed, where necessary, in this opinion and order.

i.    New York Law

Under New York law, "[i]n determining whether a party is a prevailing party, a fundamental consideration is whether that party has 'prevailed with respect to the central relief sought.'"  Chainani v. Lucchino, 942 N.Y.S.2d 735, 736 (App. Div. 2012) (quoting Nestor v. McDowell, 615 N.E.2d 991, 994 (N.Y. 1993)).  "[S]uch a determination requires an initial consideration of the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope." Excelsior 57th Corp. v. Winters, 641 N.Y.S.2d 675, 676 (App. Div. 1996) (citing Solow v. Wellner, 613 N.Y.S.2d 163 (1994), aff'd, 658 N.E.2d 1005 (N.Y. 1995)). "Prevailing party" status is determined on the matter as a whole, not on a claim-by-claim basis.  See Wiederhorn v. Merkin, 952 N.Y.S.2d 478, 482 (App. Div. 2012) ("It is not necessary for a party to prevail on all of his claims in order to be considered 'prevailing'"); see also Matsumura v. Benihana Nat'l Corp., No. 06 CIV. 7609 NRB, 2014 WL 1553638, at *5 (S.D.N.Y. Apr. 17, 2014) (applying New York law and finding defendant was the "prevailing party" where it successfully defended "the central claim" and "the large majority of secondary claims advanced by plaintiffs").

Indisputably, PaySys has not "prevailed with respect to the central relief" it sought in this case.  See Nestor, 615 N.E.2d at 994.  Nine of PaySys's ten original claims have been defeated (see ECF Nos. 183, 231, 232), and PaySys now seeks to voluntarily dismiss its sole remaining claim with prejudice and has agreed to award Atos "an unqualified covenant not to sue with an unrestricted, perpetual, assignable global license to CardPac and CardPac derivatives with no further obligations to

PaySys." (ECF No. 309 at 2 (alterations omitted).)  Nevertheless, PaySys suggests that because "Plaintiff's territorial claim has not been litigated," (ECF No. 303 at 2), and its "remaining claims have merit," (ECF No. 327 at 5), Atos should be denied "prevailing party" status, as well.  New York courts would disagree.

While New York courts may not declare a "prevailing party" where the "outcome of [the] litigation was not substantially favorable to either side," Graham Court Owner's Corp. v. Taylor, 28 N.E.3d 527, 533 (N.Y. 2015) (discussing Ram I, LLC v. Stuart, 668 N.Y.S.2d 888 (Mem) (App. Div. 1998)), a party that clearly fares better than the other is the "prevailing party" under New York law, see Matsumura, 2014 WL 1553638, at *5.  When considering whether a defendant is the "prevailing party" for the purpose of securing attorneys' fees, New York courts consider whether the defendant successfully stymied the plaintiff's goals, not whether the defendant achieved full satisfaction of its own counterclaims.  See Excelsior 57th Corp., 641 N.Y.S.2d at 676 (declaring landlord "prevailing party" in his claim for 54-months rent against tenants, who in turn had claimed constructive eviction and breach of warranty of habitability for 24 of those months, because the court had found that tenants were only entitled to a rent abatement of 4.5 months); see also Metro. Transp. Auth. v. HRH Const. Interiors, Inc., No. 105468-2007, 2008 WL 451433, at *3 (N.Y. Sup. Ct. 2008) (determining defendant was prevailing party even though it secured only a small portion of the damages it sought on its counterclaims because plaintiff had sued to recover contract balances from defendant without any setoffs, but instead, defendant was awarded setoffs that were five times greater than the

8

contract balances plaintiff sought to recover). Here, PaySys will exit this litigation having lost or voluntarily dismissed each of its claims. To nevertheless suggest that Atos is not the "prevailing party" on the central relief PaySys sought is to sidestep entirely New York courts' understanding of the term.

PaySys seeks to avoid this conclusion by arguing that the fee-shifting provision of the CSA applied only to its breach of contract claim, and therefore the "prevailing party" inquiry should focus exclusively on this single claim. (See ECF No. 345 at 9.) According to PaySys, the fact that it has already lost nine of its ten claims is of no import because, if it "had proceeded to litigate and prevail on the merits of its Territorial Claim, it would have been entitled to fees under CSA § 6(e), irrespective of the dismissal of its foreign copyright, trade secret and other claims, which arose from different transactions and sought different relief." (Id. at 10.) This proposition is wrong on two fronts.

First, PaySys's territorial claim does, in fact, arise from the same transactions as a number of its now-defunct claims, and therefore PaySys's failure to succeed on any of its other claims is relevant to its status as a prevailing party on its remaining contractual claim. PaySys has conceded a connection between its various claims on a number of occasions. In the Second Verified Amended Complaint, for instance, PaySys alleged that Atos's failure to include territorial restrictions on remote access in its post-CSA customer agreements "is both a breach of the parties' Agreement [Count One] and a violation of conditions applicable to the sublicenses, and thus places customers in the position of infringing PaySys's

copyright [Counts Four-Seven] and trade secrets [Count Two-Three] and converting PaySys' property rights [Count Eight]." (SVAC ¶ 146.) Moreover, in response to an interrogatory regarding PaySys's claims that Atos misappropriated trade secrets," PaySys "identifie[d] as a misappropriation of its trade secrets <u>every single transaction, use, act or omission that exceeded what was contractually permitted</u> by, among other things, . . . the confidentiality or other terms of the relevant agreements, including the 2001 Settlement Agreement." (ECF No. 231 at 7 (emphasis added).) And as a final example, PaySys, in defending its unfair competition claim against Atos's motion for summary judgment, argued that "the impermissible terms that Defendants have offered their customers"—including, presumably, the right to use PaySys's software without express restrictions on remote access, "affected the outcome of direct competitive bidding by PaySys against Worldline and Accellence," and therefore amounted to unfair competition under New York law (<u>i.e.</u>, PaySys's ninth cause of action). (ECF No. 156 at 10.) In short, PaySys's claims for conversion, misappropriation of trade secrets and perhaps even copyright infringement each relied, in part, on PaySys's territorial allegations. PaySys's failure to prevail on any of these other, related claims therefore plays into whether it can be considered a prevailing party under the CSA, even though only the contractual claim implicates the parties' fee-shifting arrangement.

Second, and perhaps more importantly, the Court is highly skeptical that PaySys would be entitled to attorney's fees on its territorial claim at this point in the litigation, even if the Court were to find in its favor on the remaining portion of

its contractual claim.  PaySys seems to forget that its territorial claim initially

concerned a broader swath of allegedly deficient agreements than it now seeks to

litigate.  In particular, Atos identified twenty-three agreements that Atos or

Wordline executed after December 23, 2008[4] that would have seemingly amounted

to territorial violations under the parameters set forth in PaySys's Second Verified

Second Amended Complaint.  (See ECF No. 282 ¶ 51.)[5]  Now, however, PaySys has

determined that one of Atos's software packages—ASCCEND—does not, in fact,

contain PaySys's proprietary code, and therefore only eight agreements are

implicated by PaySys's territorial allegations.  (See ECF No. 320 at 6.)  Given how

significantly PaySys's territorial claim has contracted, it is entirely plausible—and

perhaps even likely—that PaySys would not be considered the "prevailing party"

under Section 6(e) of the CSA, regardless of whether it prevailed on the remaining

portion of its remaining claim.  PaySys's insistence that the Court must make a

decision on the merits of its breach of contract claim before ascertaining a

prevailing party is undermined, in this case, by the fact that PaySys may not

"prevail" even if it wins.

    The notion that Atos may be declared the "prevailing party" under Section

6(e), even without an adjudication of the parties' contractual claims, is bolstered by

the court's decision in Terra Energy & Res. Techs., Inc. v. Terralinna Pty. Ltd., No.

---

[4] There is a six-year statute of limitations on contract disputes under New York law.  N.Y. C.P.L.R. § 213(2).

[5] Atos asserted that PaySys identified these twenty-three agreements as purported territorial violations, but PaySys disputes this fact.  (See ECF No. 317 ¶ 51.)

12 CIV. 1337 KNF, 2014 WL 1357326 (S.D.N.Y. Apr. 7, 2014), <u>reconsideration</u> <u>granted on other grounds</u>, No. 12-CV-1337 KNF, 2014 WL 5690416 (S.D.N.Y. Nov. 5, 2014).  There, a federal court applying New York law in a three-count action— only the third count of which implicated a fee-shifting provision in the parties' contract—held that the defendant was the "prevailing party" in the dispute and was entitled to attorney's fees under the parties' contract, notwithstanding the fact that the defendant had secured a judgment in its favor only on the first two counts, and the plaintiff had voluntarily dismissed the third count (<u>i.e.</u>, its sole contractual claim).[6]  <u>Id.</u> at *4.  As the Court reasoned, the plaintiff, in voluntarily dismissing its claim, "did 'not prevail with respect to the central relief sought . . ., that is, the recovery of damages from [the defendant] for breaching [the contract],'" and thus the defendant "is the prevailing party."   <u>Id.</u> at *4 (quoting <u>Nestor</u>, 615 N.E.2d at 994).  <u>Terra</u> thus serves as a direct analog to the case at hand, where PaySys seeks to voluntarily dismiss its only claim that implicates the parties' fee-shifting agreement after the Court has whittled away its other claims.  Just as the defendant prevailed in <u>Terra</u>, so too does Atos prevail here.[7]

---

[6] The court initially declined to grant attorneys' fees to the defendant pursuant to a Rule 54(d)(2) motion, notwithstanding defendant's "prevailing party" status under the party's contract, because the court initially determined that Rule 54(d)(2) does not apply "where a movant's 'recovery of attorney's fees and costs would be contractual.'"  <u>Terra</u>, 2014 WL 1357326, at *5 (quoting <u>Hanley v.</u> <u>Herrill Bowling Corp.</u>, No. 94-CV-4611, 1996 WL 79324, at *2 (S.D.N.Y. Feb. 23, 1996).  On reconsideration, the court found that "its prior determination cannot stand" and held that defendant "may recover, perforce of the [parties' contractual] fee-shifting provision, reasonable attorneys' fees, costs and other expenses" under Rule 54(d)(2).  <u>Terra</u>, 2014 WL 5690416, at *5.

[7] The Court recognizes that the plaintiff in <u>Terra</u> voluntarily dismissed its contractual claim without prejudice, <u>see</u> 2014 WL 1357326 at *3-4, whereas here, PaySys seeks a dismissal with prejudice.  While this distinction may affect the propriety of awarding attorney's fees under the Court's inherent authority, <u>see</u> <u>Colombrito v. Kelly</u>, 764 F.2d 122, 133-34 (2d Cir. 1985), it has no bearing on whether

PaySys distinguishes <u>Terra</u> on the ground that the plaintiffs there sought voluntary dismissal only after determining "that they had no document supporting [their] claim," 2014 WL 1357326, at *2, whereas PaySys believes it can still prove its territorial claim, but simply does not believe the likely damage award would warrant the cost of continued litigation (ECF No. 345 at 8-9). As an initial matter, this seems like fancy footwork on the part of PaySys, since it, too, determined that a large chunk of its territorial claim was no longer meritorious (<u>i.e.</u>, the portion relating to ASCCEND). (<u>See</u> ECF No. 320 at 6.) Second, PaySys has not explained why courts should treat Rule 41(a)(2) motions differently based on a plaintiff's proffered reason for filing the motion. Under PaySys's reasoning, a defendant may secure prevailing party status if a plaintiff states in its Rule 41(a)(2) motion that it no longer wishes to pursue a claim because it no longer thinks it can win, but a defendant is barred from prevailing party status if the plaintiff instead insists that the costs of litigation have become too high. The Court sees no principled basis for drawing this distinction, and PaySys has not pointed the Court to any case that suggests one exists.

Finally, the two cases PaySys relies on to show that a determination on the merits is necessary to name a prevailing party under New York law provide only limited support. PaySys points first to <u>Chainani</u>, where the Appellate Division declined to name the plaintiffs the prevailing party after they "did not obtain the

---

Atos is properly named the "prevailing party" under the terms of the parties' contract, and thus whether Atos ought to be awarded attorney's fees based on that contractual arrangement.

full measure of injunctive relief they sought, did not receive an award of damages, and, importantly, did not obtain a determination that defendants breached the [parties'] agreement." 942 N.Y.S.2d at 737. But <u>Chianani</u> is distinguishable in two key respects. First, the plaintiffs there "obtained only a small measure of the overall relief they sought," <u>id.</u>, whereas here, Atos has emerged victorious on each claim it has litigated thus far. Second, plaintiffs and defendants are not similarly situated in all respects. A plaintiff bears the burden of proving its case, and its failure to do so may make securing prevailing party status difficult. But a defendant must only prevent the plaintiff from achieving the relief it seeks. A defendant need not prevail on the merits to prevent a plaintiff from obtaining the bulk of its sought-after relief. <u>Cf.</u> <u>Terra</u>, 2014 WL 1357326, at *4.

PaySys's reliance on <u>Downtown Realty Operating Corp. v. Flatiron 21 Assocs., LLC</u>, No. 603676/2005, 2010 WL 5566821 (N.Y. Sup. Ct. 2010) is equally unavailing. There, the Commercial Division stated that "[v]oluntary withdrawal of a claim prior to any judicial determination does not render the opposing party a prevailing party." <u>Downtown Realty Operating Corp. v. Flatiron 21 Assocs., LLC</u>, No. 603676/2005, 2010 WL 5566821 (N.Y. Sup. Ct. 2010). But the Court is not persuaded that this is a correct statement of the law, particularly since the Appellate Division case <u>Downtown Realty</u> cites in support of this assertion in fact stands for a far narrower proposition—namely, that a plaintiff's "voluntary withdraw[al] <u>without leave of the court</u> before any judicial determination of the issues" does not make the defendant a "prevailing party." <u>See</u> <u>Mucerino v.</u>

14

Firetector, Inc., 761 N.Y.S.2d 269 (App. Div. 2003) (emphasis added). The Court recognizes that voluntary dismissal of a claim before any sort of judicial intervention in the case may affect the analysis "of the true scope of the dispute litigated [and] . . . what was achieved within that scope." See Excelsior 57th Corp., 641 N.Y.S.2d at 676. But, where, as here, the plaintiff seeks to voluntary dismiss a claim, by Court Order, after nearly three years of litigation, the Court does not find the decision in Downtown Realty to be particularly helpful or persuasive. Thus, for the reasons stated above, the Court finds that Atos is the prevailing party, for the purposes of the fee-shifting provision in the CSA, under New York law.

    ii.    Federal law

The Court reaches the same conclusion if it follows Atos's proposed path and looks to federal law to interpret the parties' contract. The leading Supreme Court case to consider the term "prevailing party" in the context of fee-shifting provisions— Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001)—explained that a "prevailing party" emerges where a court order "create[s] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Id. at 604 (quoting Texas State Teachers Assn. v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). As the Second Circuit has explained, a material alternation of the parties' legal relationship alone is not sufficient; "that change must also be judicially sanctioned." Perez v. Westchester Cty. Dep't of Corr., 587 F.3d 143, 149 (2d Cir. 2009) (quoting

Roberson v. Giuliani, 346 F.3d 75, 79 (2d Cir. 2003)) (internal quotation marks omitted).

Notably, Buckhannon analyzed the term "prevailing party" as it is used in certain federal housing and disability statutes. Despite its original statutory setting, Buckhannon has since been applied to decipher fee-shifting provisions in state law contracts. See Great Earth Int'l Franchising Corp., 2004 WL 2049268, at *2 ("[T]he source of the fee-shifting requirement, whether statutory or contractual, should not matter for purposes of understanding that term."); see also MTX Comm'cns Corp. v. LDDS/WorldCom, Inc., No. 95 Civ 9569 (RO) 2001 WL 674142, at *1 (S.D.N.Y. June 15, 2001) ("[T]he standards governing who is a 'prevailing party' in the statutory context should not significantly differ in a contract case."). Thus, while the Court disagrees with the parties' focus on federal law in the first instance, it finds that Buckhannon and its Second Circuit progeny are the most relevant cases within this analytical approach.[8]

Under the Buckhannon line of cases, the Court easily finds that PaySys's voluntary dismissal with prejudice of its sole remaining claim materially alters the

---

[8] This is the case even though Buckhannon was decided shortly after the parties signed the CSA, and thus did not serve as a backdrop during the drafting of their agreement. Compare Buckhannon, 532 U.S. at 598 (decided May 29, 2001) with ECF No. 130 Ex. 4 at 15, dated Apr. 27, 2001). As the Buckhannon court made clear, its interpretation of "prevailing party" was "distilled from [its] prior cases," all of which were decided long before the parties produced the contractual provision at issue in this case. See id. at 603-04 (citing Texas State Teachers Assn., 489 U.S. at 792; Hewitt v. Helms, 482 U.S. 755, 760 (1987); Maher v. Gagne, 448 U.S. 122, 100 (1980); Hanrahan v. Hampton, 446 U.S. 754, 758 (1980). Because Buckhannon clarified an already established understanding of the term, it is appropriate to rely on its synthesis of the law in construing the party's intent here. Both parties' reliance on Buckhannon and post-Buckhannon cases in their briefing further buttresses this conclusion.

legal relationship of the parties in Atos's favor, and does so with the imprimatur of the Court.  As much is clear from <u>Carter v. Inc. Vill. of Ocean Beach</u>, 759 F.3d 159 (2d Cir. 2014), where the Second Circuit held that plaintiff's "voluntary dismissal of some claims, coupled with the grant of summary judgment dismissing the claims that remain, ma[de] the [defendants the] prevailing parties." <u>Id.</u> at 166.[9]  As the court explained, a "voluntary dismissal of an action with prejudice works [a material] alteration, because it constitutes 'an adjudication on the merits for purposes of <u>res judicata</u>,' and any action so dismissed could not be brought again." <u>Id.</u> (quoting <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343, 345 (2d Cir. 1995)) (internal citation omitted).  Moreover, voluntary dismissal bears the Court's imprimatur in the way a private settlement agreement might not, <u>see</u> <u>Buckhannon</u>, 532 U.S. at 604 n.7, because it can be effected "only by court order, on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2); <u>see also</u> <u>Perez</u>, 587 F.3d at 152 (holding a "settlement [that] was only made operative by the Court's review and approval" satisfied <u>Buckhannon</u>'s requirement that the change in the parties' legal relationship be judicially sanctioned).[10]

---

[9] PaySys argues that the award of fees in <u>Carter</u> "turned on . . . a determination of reasonableness." (ECF No. 327 at 3 n.2.)  Though the <u>Carter</u> court certainly emphasized the frivolousness of the plaintiffs' claims, it in no way predicated its reasoning or holding regarding the defendants' "prevailing party" status on that finding.  <u>See</u> 759 F.3d at 165-66.

[10] In its objection to the Proposed Memorandum Decision & Order, PaySys focuses on the Second Circuit's decisions in <u>Scarangella v. Grp. Health, Inc.</u>, 731 F.3d 146 (2d Cir. 2013) and <u>Perez v. Westchester Cty. Dep't of Corr.</u>, 587 F.3d 143 (2d Cir. 2009).  (<u>See</u> ECF No. 345 at 11-14.)  To the extent aspects of these cases endorse a narrower view of "prevailing party" than the Second Circuit's decision in <u>Carter</u>, the reasoning and holding of the later decision prevails.  <u>See, e.g.</u>, <u>Fireman's Fund Ins. Co. v. Plaza Oldsmobile Ltd.</u>, 600 F. Supp. 1452, 1458 (E.D.N.Y. 1985) ("[I]f there is a conflict between [two Second Circuit decisions], then [the second decision] must prevail because it is the more recent decision.").

PaySys's citation to <u>EMI Blackwood Music Inc. v. KTS Karaoke, Inc.</u>, 655 F. App'x 37 (2d Cir. 2016) offers no support to the contrary.  In <u>EMI</u>, the plaintiff voluntarily dismissed its claim under the Copyright Act (a statute that provides for an award of attorney's fees to the "prevailing party") only after the parties reached a settlement agreement that required the defendant's insurer to pay the plaintiff more than $1 million.  <u>Id.</u> at 39-40.  The court expressly assumed that the parties' settlement agreement "both materially altered the legal relationship between the parties and bore such a judicial imprimatur," <u>id.</u> at 39, but it refused to name the defendant the "prevailing party," given that its "insurer ha[d] paid substantial sums to achieve this result," <u>id.</u> at 40.  The <u>EMI</u> court thus had no quarrel with the notion that voluntary dismissal with prejudice produces a prevailing party, as the Second Circuit held in <u>Carter</u>; it simply cautioned that the prevailing party is not necessarily the defendant.  But such words of warning are inapplicable here, where Atos has not made any concessions or payments to secure PaySys's voluntary dismissal, and has instead prevailed on each of the claims it has litigated.  As in <u>Carter</u>, Atos's "victory . . . was total," and as in <u>Carter</u>, Atos is the "prevailing party" under the federal law definition of that term.  <u>See</u> 759 F.3d at 166.

PaySys' reliance on <u>Kuk Je Med. Corp. v. Home Diagnostics, Inc.</u>, No. 92 CIV. 3308 (KTD), 1994 WL 465844 (S.D.N.Y. Aug. 26, 1994), is similarly misplaced. PaySys argues that, under <u>Kuk Je Med. Corp.</u>, "a defendant is entitled to

contractually-based fees . . . 'when it is clear that plaintiff's action is groundless.'"

(ECF No. 327 at 2-3 (quoting 1994 WL 465844, at *3).)  Though the Court agrees

with PaySys's reading of the case, it views <u>Kuk Je Med. Corp.</u>'s proposed rule as

overly simplistic in light of the existing case law.  Indeed, <u>Kuk Je Med. Corp.</u>'s own

citations recognize a broader view of "prevailing party" than the <u>Kuk Je Med. Corp.</u>

court adopted.  <u>See, e.g.</u>, <u>Fernandez v. Southside Hosp.</u>, 593 F. Supp. 840, 843

(E.D.N.Y. 1984) (noting that a defendant may prevail following a plaintiff's

voluntary dismissal not only where the claim is groundless, but also where "there

have been proceedings on the merits or substantial discovery").  This Court is thus

not persuaded that the parties intended to adopt <u>Kuk Je Med. Corp.</u>'s reasoning

when drafting their contract, particularly since the only other case to ever cite <u>Kuk</u>

<u>Je Med. Corp.</u> applied <u>Buckhannon</u>'s interpretation of "prevailing party" in

analyzing a contractual fee-shifting provision.  <u>See</u> <u>MTX Commc'ns Corp.</u>, 2001 WL

674142, at *1.

Thus, this Court concludes Atos is the "prevailing party" under Section 6(e),

regardless of whether the term is interpreted under New York or federal law, and is

thereby entitled to its reasonable attorneys' fees.

B.     <u>Rule 41(a)(2) and Attorneys' Fees</u>

Having determined that Atos prevailed with respect to PaySys's breach of

contract claim, the Court must now consider whether it may direct PaySys to pay

Atos's reasonable attorneys' fees under Section 6(e) as a prerequisite to approving

PaySys's voluntary dismissal of that claim.  Rule 41(a)(2) plainly contemplates that

the Court may condition its approval of PaySys's voluntary dismissal on compliance with certain "terms." See Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").  And the Second Circuit has recognized that monetary awards, such as attorneys' fees and costs, are among the "terms" that may accompany a court-ordered dismissal under Rule 41(a)(2).  See United States v. Cathcart, 291 F. App'x 360, 362 (2d Cir. 2008).

Pursuant to their inherent authority, courts frequently award fees when a plaintiff dismisses its suit without prejudice under Rule 41(a)(2).  Colombrito v. Kelly, 764 F.2d 122, 133 (2d Cir. 1985).  However, under the well-established "American Rule," which requires litigants to pay their own attorneys' fees, regardless of which party succeeds in court, courts generally do not award attorneys' fees as a condition of a dismissal with prejudice unless there is an independent statutory or contractual basis for doing so.[11]  See id. at 134 (suggesting that an award of attorney's fees following voluntarily dismissal is appropriate "only when there is independent statutory authority for such an award" or "under exceptional circumstances"); see also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) ("Under the American Rule, it is well established that attorneys' fees are not ordinarily recoverable in the absence of a statute or

---

[11] Courts may also invoke their "inherent authority to award fees when a party litigates frivolously or in bad faith."  Colombrito, 764 F.2d at 133.  While Atos submits that PaySys has done so here (e.g., ECF No. 312 at 3, 13), the Court need not reach this question because it will award fees on the claim PaySys seeks to voluntarily dismiss pursuant to Section 6(e), not its inherent authority.  A finding of frivolousness or bad faith is not necessary to award attorneys' fees under Rule 41(a)(2) where there is an independent basis to do so.  See id. at 133-34.

enforceable contract providing therefor.") (quoting <u>Summit Valley Indus., Inc. v. United Bd. of Carpenters & Joiners of Am.</u>, 456 U.S. 717, 721 (1982)) (alterations and quotation marks omitted).

Parties may contract around the American Rule, and federal courts will enforce such fee-shifting provisions "if the contract is valid under applicable state law." <u>Matsumura</u>, 2014 WL 1553638, at *3 (quoting <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313 (2d Cir. 1993)). Pursuant to New York law, which governs the SAA as amended, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." <u>Metro Found. Contractors, Inc. v. Arch Ins. Co.</u>, 551 F. App'x 607, 610 (2d Cir. 2014) (quoting <u>NetJets Aviation, Inc. v. LHC Commc'ns, LLC</u>, 537 F.3d 168, 175 (2d Cir. 2008)).

Each of the requisite conditions is satisfied here. Section 6(e)'s provision for an award of attorneys' fees to the "prevailing party" in a dispute regarding an alleged territorial violation is "sufficiently clear"; the claim that PaySys now seeks to voluntarily dismiss concerns an alleged territorial violation (<u>see</u> ECF No. 303 at 2; ECF No. 306 1-2); and Atos is the "prevailing party" on this claim (<u>see</u> <u>supra</u> Section II.A). The Court thus sees no barrier to enforcing the parties' agreement.

As a final point, the Court recognizes that PaySys did not contemplate paying Atos's attorneys' fees when it filed its motion under Rule 41(a)(2). That the motion may have transmuted beyond what PaySys initially intended does not affect the Court's decision. The Second Circuit requires only that a plaintiff be afforded "an

opportunity to withdraw his motion and proceed with the litigation in the event that a district judge proposes to convert a voluntary dismissal to one with prejudice." Gravatt v. Columbia Univ., 845 F.2d 54, 56 (2d Cir. 1988). The Second Circuit has acknowledged that some "other circuits have gone even further" and have required courts to allow plaintiffs to withdraw a Rule 41(a)(2) motion when "the terms and conditions on which the dismissal is to be granted are 'too onerous,'" but the Second Circuit has not yet adopted such a rule. See id. In any event, conditioning dismissal of PaySys's contract claim on the payment of Atos's attorneys' fees is not "too onerous," as it is the outcome the parties' contract demands. See supra Section II.A (finding that Atos is the "prevailing party" in the parties' contract dispute, and thereby entitled to its attorneys' fees).

PaySys vigorously disputes this conclusion but offers no in-circuit support for the proposition that it must be afforded the opportunity to withdraw its motion to dismiss. Though PaySys plucks helpful language from Spirit Realty, L.P. v. GH & H Mableton, LLC, No. 15 Civ. 5304 (GWG), 2017 WL 24782 (S.D.N.Y. 2017), that case is inapposite to the matter at hand. There, the court observed, in a footnote, that "[w]here, as here, a court places terms and conditions on a motion for voluntary dismissal, the court should grant a litigant the opportunity to withdraw its motion should the litigant deem the terms too onerous.") Id. at *7 n.6. But the "terms and conditions" to which the court was referring was its decision to convert a portion of the defendant's motion to dismiss its counterclaim without prejudice into a dismissal with prejudice. Id. at *7. This is only condition the Second Circuit has

identified as requiring notice and an opportunity to withdraw, see Gravatt, 845 F.2d at 56, and the Court has not encountered any in-circuit case that has extended Gravatt to the circumstances present here.[12]

PaySys's Rule 41(a)(2) motion is therefore granted as unopposed and this action is dismissed with prejudice, conditional upon PaySys's grant to Atos of "an unqualified covenant not to sue with an unrestricted, perpetual, assignable global license to CardPac and CardPac derivatives with no further obligations to PaySys" (ECF No. 309 at 2) (alternations omitted) and, upon the Court's approval of an appropriate application by Atos, payment to Atos of the reasonable attorneys' fees it incurred in connection with the parties' territorial claims in an amount to be determined by the Court. This ruling precludes the need to resolve the pending summary judgment motions and, subject to the satisfaction of the terms of dismissal, fully terminates the matter.

## III. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS PaySys's motion for voluntary dismissal, subject to the terms set forth below. (ECF No. 275.) Atos's

---

[12] The closest case the Court found was Negron v. Bank of Am. Corp., No. 15CV8296 (DLC), 2017 WL 1232717 (S.D.N.Y. Apr. 3, 2017), in which the plaintiff filed a motion to voluntarily dismiss his federal claims with prejudice under Rule 41(a)(2). Id. at *2. The Court determined that "Rule 41(a)(2) . . . permits a dismissal to be conditioned on terms that a court considers proper" and identified three conditions that would "protect[] the defendants from onerous relitigation" of certain claims. Id. at *2-3. The court then stated it would grant the plaintiff's motion to voluntarily dismiss the action subject to the three aforementioned conditions, "so long as [the plaintiff] informs the Court . . . that he consents to these conditions." Id. at *3. The court's decision to grant the plaintiff the opportunity to dispute particular conditions does not mean that it was required to do so, and nothing in the Negron decision suggests otherwise.

motion for summary judgment (ECF No. 280) and PaySys's motion for partial summary judgment are hereby terminated as moot (ECF No. 286).

The Court further ORDERS as follows:

1. This action is dismissed with prejudice under Rule 41(a)(2), subject to the following terms: (1) that PaySys grant Atos an unqualified covenant not to sue Atos; (2) that PaySys grant Atos an unrestricted, perpetual, assignable global license to CardPac and CardPac derivatives with no further obligations to PaySys; and (3) that PaySys pay Atos its reasonable attorneys' fees in connection with its claim that Atos "committed a territorial violation," an amount to be determined by the Court upon an appropriate application by Atos.

2. Not later than Friday, July 21, 2017, PaySys shall execute the requisite paperwork to effectuate the covenant not to sue and grant of a license and file an affidavit attesting that these terms of dismissal have been satisfied.

3. Atos shall make an appropriate motion for reasonable attorneys' fees not later than Friday, August 11, 2017. This motion shall cover any and all bases pursuant to which Atos seeks attorneys' fees in this litigation as a whole, such as Section 6(e), 17 U.S.C. § 505 and Fla. Stat. Ann. § 688.005.

4. PaySys shall file any opposition to said motion not later than Friday, September 1, 2017.

The Clerk of Court is hereby directed to terminate the motions at ECF Nos.
275, 280 and 286 and to place this matter on the suspense docket.

      SO ORDERED.

Dated:        New York, New York
             July 7, 2017

                                     KATHERINE B. FORREST
                                   United States District Judge