UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
PAYSYS INTERNATIONAL, INC.,            :
                                       :
                         Plaintiff,    :
          -v-                          :        14cv10105(DLC)
                                       :
ATOS SE, WORLDLINE SA, ATOS IT         :        OPINION AND ORDER
SERVICES LTD.,                         :
                                       :
                         Defendants.   :
                                       :
-------------------------------------- :
ATOS SE, WORLDLINE SA, ATOS IT         :
SERVICES LTD.,                         :
                                       :
                         Counterclaim  :
                           Plaintiffs, :
          -v-                          :
                                       :
PAYSYS INTERNATIONAL, INC. and FIRST   :
DATA CORPORATION,                      :
                         Counterclaim  :
                           Defendants. :
                                       :
-------------------------------------- X

APPEARANCES:

For the Plaintiff:
Robert D. Owen
Travis J. Mock
Eversheds Sutherland, LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036

Peter C. Quittmeyer
Anna C. Halsey
Eversheds Sutherland, LLP
999 Peachtree Street, Ne
Atlanta, GA 30309

Jack Massey
Mark Thibodeaux

Eversheds Sutherland, LLP
1001 Fannin, Suite 3700
Houston, TX 77002

James H. Neale
Winslett Studnicky McCormick & Bomser
6 East 39th Street, 8th Floor
New York, NY 10016

For the Defendants:
Leon Medzhibovsky
Francis W. Ryan
Airina L. Rodrigues
Melissa A. Reinckens
Marc E. Miller
Matthew N. Ganas
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020

DENISE COTE, District Judge:

Having prevailed after more than four years of litigation on almost every claim brought by the plaintiff, defendants Atos Se, Worldline SA, and Atos IT Services Ltd. ("Atos") have moved for an award of attorneys' fees and costs in the amount of over $6 million.  Plaintiff PaySys International, Inc. ("PaySys") recognizes that it has a contractual duty to pay some attorneys' fees, but opposes the request on the grounds that Atos's application is flawed and argues that it has no obligation to pay more than $138,969.57.  For the following reasons, Atos is awarded a sum to be calculated using the rulings set forth below.

## Background

The parties are worldwide competitors in the business of
providing credit card payment processing software to financial
institutions.  Their dispute arises out of a series of
agreements connected to a license for a credit card payment
processing software developed by PaySys named CardPac.[1]  PaySys
ceased licensing its original CardPac software in 1988, which is
the year in which PaySys executed its first agreement with an
Atos predecessor.  The 1988 license was a ten-year exclusive
license, followed by a perpetual non-exclusive license to
incorporate all or any portion of the CardPac product into
products developed or marketed within a defined international
territory (the "Territory"), which originally included listed
countries in Europe and Asia.[2]  By 2001 at the latest, PaySys
retired the CardPac product.  PaySys developed and is licensing
new products that are not at issue in this litigation.

Also in 2001, the parties resolved all outstanding disputes
between them, which principally concerned the defendants'
alleged violations of the territorial restrictions in their

---

[1] For ease of reference, the parties' predecessors are not named;
the parties' current names are used in place of their
predecessors' names.

[2] Pursuant to a 1990 agreement, PaySys also gave Atos rights to
use and license a separate software program called an APS
Module, also within the Territory.

agreements.  The Territory was expanded in 2001, as part of the

settlement agreement between the parties (the "CSA"), to include

"the entire world other than North America . . . South America,

Central America and the Caribbean Islands."  The CSA, which is

governed by New York law, contained a fee-shifting provision.

It provides that "[i]n the event of litigation between the

parties with respect to any claim that [Atos] had committed a

territorial violation, the prevailing party shall be entitled to

an award of its reasonable attorneys' fees."

In 2004, Atos acquired the company that had obtained the

license from and executed the CSA with PaySys.  The execution of

the CSA in 2001 had ended the parties' interactions until the

summer of 2013, when PaySys requested an audit.  As of 2013,

PaySys was under new management and engaged in a turn-around

initiative following years of financial struggle.  On July 31,

2014, PaySys explained its concerns that Atos had violated the

CSA, including its concern that Atos had granted licenses to

third parties who were remotely accessing the CardPac software

from outside the Territory in violation of the CSA's territorial

restrictions.  In 2014, Atos voluntarily produced eight

representative customer agreements to demonstrate that PaySys's

territorial allegations were baseless.  During its year-and-a-

half audit of Atos, PaySys did not uncover any evidence that

Atos had violated the territorial restrictions in their
agreement.

On December 23, 2014, PaySys sued Atos, alleging contract,
U.S. copyright, and New York and Florida trade secrets claims.
About five weeks earlier, PaySys had registered copyrights in
eight CardPac-related works.  In its complaint, PaySys asserted
that it had lost hundreds of millions of dollars in profits due
to unlicensed activities by Atos.  It accused Atos of
intentional and pervasive non-compliance with clear license
restrictions, which included allowing others to use the PaySys
software on terms that Atos never had any right to allow.  The
complaint explained that the parties' agreement contained, inter
alia, territorial restrictions that Atos had breached by
granting its customers licenses without those restrictions, and
that its breach of this and other licensing requirements "places
customers in the position of infringing PaySys's copyright and
trade secrets."  On March 27, 2015, PaySys amended its complaint
to add foreign copyright infringement (pursuant to the laws of
Belgium, China, France, and Thailand), conversion, and unfair
competition claims.  It warned, in an April 7 letter to Atos,
that it was engaged in a "$200 million plus battle" for damages
on numerous claims, asserting that Atos had "flagrantly
violated" the parties' agreement in several ways, including by
ignoring the territorial limitations.  In its correspondence and

discovery demands throughout 2015, PaySys continued to link Atos's purported violation of the territorial restrictions in their agreements with the asserted violations by Atos's customers of PaySys's copyright, trade secret, and common law rights.

On July 24, 2015, the Honorable Shira Scheindlin, to whom this case was then assigned, dismissed PaySys's domestic copyright claims for failure to state a claim. <u>Paysys Int'l v. Atos SE</u>, No. 14cv10105(SAS), 2015 WL 4533141 (S.D.N.Y. July 24, 2015). She ruled that the domestic copyright claims were barred on extraterritoriality grounds "[b]ecause Paysys ha[d] failed to allege any infringing activity that took place in the United States." <u>Id</u>. at *5.

Both jurisdictional and general fact discovery commenced.[3] By late 2015, Atos had produced hundreds of its customer licensing agreements, which confirmed that it had not violated the territorial restrictions in the parties' agreement. Each agreement contained an express, restricted software license grant within the authorized Territory.

On December 10, 2015, PaySys filed its final complaint, the second amended complaint ("SAC") with ten causes of action. It

---

[3] On December 22, 2015, the parties agreed to bear their own costs and attorneys' fees associated with jurisdictional discovery ordered by the court on July 24, 2015.

asserted claims for breach of contract; trade secrets

misappropriation under New York and Florida law; copyright

infringement under French, Thai, Belgian, and Chinese law; and

conversion, unfair competition, and replevin under New York law.

The SAC asserted that the defendants had violated a strict

prohibition on assignment as well as the territorial

restrictions in the CSA.  It explained that the defendants had

not conducted business in a manner "as to prohibit remote access

to PaySys software or intellectual property . . . from terminals

or workstations in the United States or other excluded

territories."  According to the SAC, the "omission of this

restriction from authorizations and licenses is in each case a

territory violation" under the CSA.  Explaining its damages

theory, the SAC asserted that "any violation of the Territory

restrictions entitles PaySys to liquidated damages equal to

'seventy-five percent (75%) of the revenue received by [the

defendants] for the grant of rights constituting the territorial

violation.'"

The SAC explained as well that the territorial violations

breached not only the CSA but also the plaintiff's rights under

various statutes and the common law.  It stated that

> [t]he failure of [defendants] to adhere to the
> sublicensing requirements and conditions contained in
> the Agreement is both a breach of the parties'
> Agreement and a violation of conditions applicable to
> the sublicenses, and thus places customers in the

> position of infringing PaySys's copyright and trade
> secrets and converting PaySys's property rights.

Thus, virtually all of the claims in the SAC related to the
assertion that Atos had breached the territorial restrictions in
its licensing agreement with PaySys.  Atos responded with seven
counterclaims for declaratory judgment.

In April 2016, the case was reassigned to the Honorable
Katherine Forrest.  As of that date, the parties had not yet
completed document discovery or scheduled depositions.
Introducing Judge Forrest to the case in a letter of April 25,
PaySys began its "Statement" of the case with the following
sentence: "[t]his case concerns violation by Defendants of a
soft-ware licensing agreement and resulting claims for breach of
contract, foreign copyright infringement, trade secret
misappropriation, conversion and unfair competition."  (Emphasis
added.)  In response to Judge Forrest's request at a conference
on April 29 that the parties divide any summary judgment
briefing by grouping related claims, Atos said that the foreign
copyright and contract claims should be briefed together because
"a license agreement . . . covers the subject matter of those
copyrights."  At the conference, Judge Forrest invited early
summary judgment motions to narrow the parties' disputes.

In May, Atos shared citations with PaySys to support its
position that the foreign copyright claims were barred by the

license.  Also in May, PaySys moved to compel Atos to produce
its confidential source code for its software.  In response,
Atos sought to elicit information regarding the scope of the
CardPac copyright registrations.  On the eve of briefing over
this issue in July, PaySys filed supplementary registrations for
the CardPac software.  Judge Forrest found that the PaySys
supplementary registrations were invalid because they
impermissibly attempted to expand the scope of the registered
work, and might even reflect a deliberate attempt to impose
costs on Atos.  PaySys Int'l, Inc. v. Atos Se, Worldline SA,
Atos IT Servs. Ltd., 226 F. Supp. 3d 206, 220-21 (S.D.N.Y.
2016).  There were additional problems with PaySys's copyright
infringement claim.  Although PaySys had submitted a declaration
representing that it had written the CardPac software entirely
from scratch, the deposition of its declarant revealed that the
software included code PaySys did not even own.

On June 28, 2016, Judge Forrest denied PaySys's motion to
obtain third-party discovery under the Hague Convention from
sixteen non-party customers or resellers of Atos' payment
processing software products.  Judge Forrest noted that the
motion appeared to be a "fishing expedition" and based on
nothing more than "mere suspicion".  The court added that
"PaySys has not satisfied the Court that an opportunity to
obtain a competitive advantage is not the true thrust behind

this motion." PaySys was granted an opportunity to renew its request if it had "specific, concrete support for the contention than an actual violation of its rights" had occurred. PaySys never renewed the request.

On May 26, Atos filed its first of several summary judgment motions. On July 14, 2016, Judge Forrest granted Atos's motion for partial summary judgment, dismissing PaySys's claims for unfair competition, conversion, and replevin on statute of limitations grounds. PaySys Int'l, Inc. v. Atos SE, No. 14cv10105(KBF), 2016 WL 10651919 (S.D.N.Y. July 14, 2016). Judge Forrest found that the three claims accrued no later than 2004, when Atos acquired the company that held the PaySys license. Id. at *6.

On December 5, 2016, Judge Forrest granted Atos's motion, filed on June 20, 2016, for summary judgment on the trade secrets misappropriation claims asserted under New York and Florida law as barred by the statute of limitations and for lacking sufficient particularity. PaySys Int'l, Inc. v. Atos Se, No. 14cv10105(KBF), 2016 WL 7116132, at *1 (S.D.N.Y. Dec. 5, 2016). In a detailed opinion, Judge Forrest recited Atos's futile efforts to obtain from PaySys during discovery an identification of its trade secrets. Judge Forrest found that "PaySys's overbroad assertion that every line of the CardPac source code -- either alone or in combination -- constitutes a

trade secret" was an extreme position that avoided identification of a testable trade secret.  Id. at *10. PaySys's positions during the litigation also undermined its very claim.  As the court explained, the "CardPac application systems consist of millions of lines of source code with diverse functionality, which was written more than thirty years ago and licensed widely.  The application systems are further broken down into more than a thousand 'component files.'"  Id. at *11. Judge Forrest observed, "How can a million lines of code written thirty years ago and licensed to people all over the world still be a trade secret?"  Id.  Moreover, PaySys had deposited the CardPac source code without redaction with the Copyright Office. Id. at *12.

As for the statute of limitations bar, Judge Forrest described PaySys's argument as follows:  that "each instance of third party licensing of CardPac constitutes a separate act of misappropriation," thereby extending the three-year limitations period.  Id.  Judge Forrest found, however, that the parties' agreement applied to affiliates and contained "no change of control provision" that would have terminated the license when Atos acquired the licensee.  Id. at *13.  Therefore, PaySys was on notice from the time of the acquisition in 2003 and 2004 that Atos had succeeded to the licensing rights.  Id.  Indeed, PaySys performed a high-level comparison of Atos's product, known as

CardLinK, to its own Vision Plus product in 2004 and 2005.  Id.
From this and other undisputed facts, the court determined that
PaySys "had long been on notice of the defendants' alleged
misappropriation of trade secrets."  Id.

On August 10, Atos filed a summary judgment motion
addressed to the foreign copyright claims.  On December 8, Judge
Forrest granted Atos's motion, dismissing PaySys's infringement
claims under French, Thai, Belgian and Chinese law.  PaySys
Int'l, 226 F. Supp. 3d at 209.  As explained in her decision,
"PaySys's domestic copyright registrations determine[d] the
scope of its foreign copyright claims."  Id. at 213.  PaySys
alleged that Atos infringed its copyrights by, inter alia,
assigning rights to various Atos affiliates and transferring
rights and obligations without imposing requisite restrictions
on remote access from outside the Territory defined in the
parties' license.  Id.

Judge Forrest first considered whether the copyright claim
was premised on the works PaySys registered with the Copyright
Office on the eve of the litigation or a supplementary
registration it filed on July 28, 2016.[4]  She found that these

---

[4] Judge Forrest noted that PaySys filed the supplementary
registrations nine days after a status conference in which Atos
previewed its intent to file the motion for summary judgment.
Id. at 214 n.8.

supplementary registrations "impermissibly" expanded the scope of PaySys's initial copyright registrations from eight discrete component files to the entire CardPac software package.  Id. at 221.  This was particularly troublesome because it was done in the midst of fact discovery.  Id.  The court therefore held that the copyright claims would be analyzed on the basis of the limited files registered with the Copyright Office on the eve of the lawsuit.  Id. at 222-223.  The Court held that these claims failed "because PaySys long ago granted defendants a license to the very works at issue within the territory at issue."  Id. at 223.  The decision granted summary judgment on, inter alia, the claim that Atos infringed PaySys's copyright by transferring rights and obligations without imposing requisite restrictions on remote access from outside the Territory.  Id. at 223 n.10.

On December 14, Atos notified PaySys of its intent to move for an award of attorneys' fees and other applicable sanctions for PaySys's pursuit of meritless claims.  On January 13, 2017, Judge Forrest denied PaySys's motions for reconsideration of the dismissal of its foreign copyright claims and for permission to file a third amended complaint.

On June 6, 2016, Judge Forrest had required Atos to produce its source code for certain Atos products for comparison with PaySys' code.  PaySys asserts that its expert conducted a comparison in April 2017 and learned that at least one of the

Atos products at issue did not include PaySys's original code. On April 3, 2017, Judge Forrest rejected PaySys's request to obtain the source code for additional Atos products. Judge Forrest found that "the lack of clarity in plaintiff's argument" was a "tactical choice." It appeared to the court that PaySys was "seeking to tether now dismissed trade secret and copyright claims to its surviving contract claim." She noted that using the CardPac code within the allowed Territory would not exceed the scope of the license.

On April 6, 2017, PaySys moved to voluntarily dismiss its sole remaining claim, which was a claim for breach of contract. Its motion came as the parties were filing dueling summary judgment motions on the contract claim. PaySys confirmed to Judge Forrest on April 17, that it would grant Atos "an unqualified covenant not to sue with an unrestricted, perpetual, assignable global license" to CardPac and its derivatives.

As noted above, the CSA contained a fee-shifting provision that allowed the prevailing party to receive an award of attorneys' fees with respect to any claim that the territorial provision of their agreement had been violated. The motion for a voluntary dismissal of the contract claim was an attempt to avoid an adverse ruling on the merits of that claim, which would have rendered Atos the prevailing party entitled to an award of

fees.[5]  On July 7, 2017, Judge Forrest granted PaySys's motion to

voluntarily withdraw on the condition that it pay Atos's

attorneys' fees.  PaySys Int'l, Inc. v. Atos Se, No. 14cv10105

(KBF), 2017 WL 2930588 (S.D.N.Y. July 7, 2017).  The Court of

Appeals vacated that order on August 20, 2018, concluding that

the district court erred when it denied PaySys an opportunity to

withdraw its motion rather than comply with the attorneys' fees

condition.  Paysys Int'l, Inc. v. Atos IT Servs. Ltd., 901 F.3d

105 (2d Cir. 2018).[6]

On September 25, 2018, this case was reassigned to this

Court.  On October 8, PaySys's motion to withdraw its motion for

voluntary dismissal was granted.  The parties thereafter renewed

their motions for summary judgment on the sole remaining claim

in the SAC.

On November 20, summary judgment was granted to Atos on

PaySys's territorial violation claim.  PaySys Int'l, Inc. v.

---

[5] In its memorandum of law in support of the Rule 41(a)(2)
motion, PaySys attributed its filing of the motion for voluntary
dismissal to its expert's comparison on March 31, 2017 of its
source code for the CardPac software with the source code for
two of Atos's current software products.  As Atos explained in
its opposition memorandum of April 19, 2017, any delay in that
comparison of source code was properly attributable to PaySys
and was in any event irrelevant to a determination that the
territorial breach theory was meritless.

[6] On August 29, 2017, while the appeal was pending, Atos filed a
motion for attorneys' fees (the "2017 Fee Application").  This
motion was administratively terminated on September 25, 2017, in
light of the pending appeal.

Atos Se, No. 14cv10105(DLC), 2018 WL 6067232 (S.D.N.Y. Nov. 20, 2018).  In the motion, PaySys identified eight agreements that Atos entered into with new customers between December 23, 2008 and December 23, 2014 for CardPac products.  PaySys did not offer any other evidence to support its claim; moreover, each of the licensing agreements contained appropriate territorial restrictions.  PaySys argued, however, that Atos breached the parties' agreement by not including in its licensing agreements with these third-parties an express prohibition against remote access from outside the Territory.  The Court rejected the PaySys argument.  Id. at *6-7.

There was a second component to PaySys's breach of contract claim.  It alleged that Atos sold three licenses for APS software during the statute of limitations period without notifying PaySys of those sales and paying PaySys the contractually required fees.  The Court awarded PaySys summary judgment in the amount of $250,000 on this claim.  Id. at *8.

In total, this litigation included two Rule 12 motions and four Rule 56 motions.  Atos also successfully opposed a motion for letters rogatory, a Rule 56(d) motion, and motions for reconsideration and for leave to file a third amended complaint.  Atos engaged three expert witnesses over the course of the litigation.  One provided an expert opinion regarding PaySys's claimed damages, the second provided an expert opinion on source

16

code, and the third, described as a "technical and industry expert," construed the contractual term concerning "remote access" to the licensed products from terminals outside the Territory.  He also explained that simple credit card authorization transactions do not involve remotely accessing the software at issue in this dispute, which is a card management system and not a consumer-facing system.

## Discussion

Atos has now moved for an award of attorneys' fees and costs pursuant to the parties' contract; the Copyright Act, 17 U.S.C. 505; the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.005; 28 U.S.C. § 1927; and the Court's inherent authority.[7]  Each of these requests is addressed in turn.

A.  Contract Award of Fees

The parties' agreement containing the fee-shifting provision is governed by New York law.  When applying New York law, a court "should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the

---

[7] PaySys also moved, in a separate motion filed on April 1, 2019, to strike the declaration accompanying Atos's motion for fees on the grounds that this declaration improperly contains legal argument and conclusory allegations and seeks to introduce facts outside the personal knowledge of the declaration's author.  The declaration assisted this Court in understanding the history of this litigation.  To the extent PaySys has disputed the accuracy of any of the material described in the declaration, those disputes have been considered by the Court.  The motion to strike is denied.

intention to do so is unmistakably clear from the language of

the contract." Mid-Hudson Catskill Rural Migrant Ministry, Inc.

v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) (citation

omitted).  Where a contract "provides for an award of reasonable

attorneys' fees to the prevailing party in an action to enforce

the contract," however, that provision "is enforceable if the

contractual language is sufficiently clear." NetJets Aviation,

Inc. v. LHC Communications, LLC, 537 F.3d 168, 175 (2d Cir.

2008) (citation omitted).  A "federal court will enforce

contractual rights to attorneys' fees if the contract is valid

under applicable state law." United States Fidelity and Guar.

Co. v. Braspetro Oil Services Co., 369 F.3d 34, 74 (2d Cir.

2004) (citation omitted).  A successful defendant may be a

prevailing party and receive fees incurred in the successful

defense of a claim.  See Residential Holdings III LLC v.

Archstone-Smith Operating Trust, 920 N.Y.S.2d 349 (1st Dep't

2011). [8]

     If a contract provides for attorneys' fees, a court must

then examine "the reasonableness of the award, generally gauged

by the amount involved in the litigation." CARCO GROUP, Inc. v.

---

[8] In the context of Title VII, courts award attorneys' fees for
any claims that "involve a common core of facts or are based on
related legal theories to those on which the plaintiff
prevailed." Green v. Torres, 361 F.3d 96, 98 (2d Cir.
2004)(citation omitted).

Maconachy, 718 F.3d 72, 88 (2d Cir. 2013) (contractual

attorneys' fees).  "[A] variety of factors inform the court's

determination of whether a requested amount of attorneys' fees

is reasonable or unreasonable, including the difficulty of the

questions involved; the skill required to handle the problem;

the time and labor required; the lawyer's experience, ability

and reputation; the customary fee charged by the Bar for similar

services; and the amount involved."  Healey v. Leavitt, 485 F.3d

63, 70 n.5 (2d Cir. 2007) (citation omitted).  "[A] request for

attorneys' fees should not turn into a second major litigation,"

however, and a court is not required "to evaluate and rule on

every entry in an application" for fees.  Marion S. Mishkin Law

Office v. Lopalo, 767 F.3d 144, 149 (2d Cir. 2014) (citation

omitted).

"[A] general contract provision for the shifting of

attorneys' fees does not authorize an award of fees for time

spent in seeking the fees themselves."  F.H. Krear & Co. v.

Nineteen Named Trustees, 810 F.2d 1250, 1266 (2d Cir. 1987).

Absent "specific language to indicate that time spent in

justifying a fee application was to be included," a contractual

fee-shifting provision will be deemed to exclude attorneys' fees

for litigating the fee dispute.  Id. at 1267.

The CSA provides that "[i]n the event of litigation between

the parties with respect to any claim that [Atos] had committed

a territorial violation, the prevailing party shall be entitled to an award of its reasonable attorney's fees." The parties do not dispute that this is an enforceable fee-shifting provision under New York law. Its language is sufficiently clear to support an award of fees to the prevailing party. There is also no dispute either that PaySys pleaded and pursued in this lawsuit a claim that Atos had committed a territorial violation, or that Atos is the prevailing party with respect to that claim.

Atos may receive reimbursement for time spent by its counsel on work during this litigation that was in defense of any claim that Atos had committed a "territorial violation". The CSA's fee-shifting provision requires an award of fees for "any claim" that Atos committed a "territorial violation", and therefore, the award of fees shall not be limited to time associated exclusively with PaySys's breach of contract claim addressed to territorial violations. If PaySys's recovery on any of its claims was premised in whole or in part on an alleged territorial violation, Atos is entitled to recovery for all of the time it spent defending against that claim.

Because PaySys had issued a license to Atos, all of PaySys's claims required a demonstration that Atos had breached the terms of the parties' licensing agreement. Unless PaySys could establish a breach, its claims for copyright infringement, illegal use of its trade secrets, and the common law claims all

failed.  And, as detailed in this Opinion, territorial
violations were at the core of PaySys's allegations that Atos
was violating the parties' agreement.

Moreover, the claims in this case were so interwoven that
it would be virtually impossible to apportion the work conducted
by Atos's attorneys.  As such, no attempt will be made at
apportionment so long as the linkage between counsel's work and
a claimed territorial violation is sufficiently established.
After all, the resolution of an application for an award of
attorneys' fees "should not result in a second major
litigation."  Fox v. Vice, 563 U.S. 826, 838 (2011); cf. Marion
S. Mishkin Law Office, 767 F.3d at 150 (A "district court is not
obligated to undertake a line-by-line review of [an] extensive
fee application.  It may, instead, exercise its discretion and
use a percentage deduction as a practical means of trimming
fat."(citation omitted)).

The parties hotly contest the amount of fees that Atos may
recover pursuant to the CSA.  Atos asserts that it should be
awarded $5,636,706 pursuant to the CSA's fee shifting provision.
It argues that the provision entitles it to recover all of its
attorneys' fees except for those associated with jurisdictional
discovery and unsuccessfully defending against PaySys's APS
breach of contract theory because the remainder of the
litigation is inextricably linked to the assertion that Atos had

breached the territorial restrictions in the CSA.[9]  It is largely
correct.

PaySys asserts that Atos is only entitled to an award of
fees for a narrowly circumscribed portion of the litigation
addressed to a single branch of its breach of contract claim.
It calculates this amount as just under $139,000.  That
assertion is clearly wrong.

The award of fees on the contract theory of recovery will
be divided into two components:  before and after PaySys filed
the SAC.  The first period runs from the filing on the lawsuit
on December 23, 2014, until the filing of the SAC on December
10, 2015.  The second period runs from the filing of the SAC
until summary judgment was granted on PaySys's remote access
territorial violation claim on November 20, 2018.[10]

Atos is awarded 80% of the attorneys' fees it is seeking
that were incurred during the second period.  This is a
conservative but fair measure of the extent to which PaySys is
contractually responsible for the Atos attorneys' fees arising
from the litigation of the territorial violation theory during
this phase of the litigation.  PaySys's litigation over the

---

[9] Atos has eliminated from its fee request the time it attributes
to jurisdictional discovery and the APS claim.

[10] Atos will also be awarded 80% of its attorneys' fees incurred
in any appeal from any summary judgment decision.

territorial restrictions pervaded its claims.  Proof of a territorial violation was the gateway to establishing its entitlement to recovery on each of its other theories of liability.

It was in the SAC, in a section devoted to the "Territorial Violations" arising from Atos's customer agreements, that PaySys most fulsomely asserted in a pleading that Atos had violated the territorial restrictions in the CSA.  In that section of the SAC, PaySys also explicitly acknowledged that this asserted breach of the CSA had resulted as well in infringements of PaySys's copyright, theft of its trade secrets, and the conversion of its property.  The SAC asserted copyright infringements in four different jurisdictions.  In her December 8, 2016 Opinion, Judge Forrest explained that PaySys's foreign copyright claims were premised, at least in part, on its assertion that Atos breached the territorial restrictions in its licenses with third parties.  PaySys Int'l, 226 F. Supp. 3d at 213.

The areas of litigation that were sufficiently linked to the alleged territorial violations therefore include: litigation over that specific provision of the parties' agreement, efforts to obtain third-party discovery through the Hague Convention of Atos's licensees, requests to examine Atos source code, pursuit of the copyright and trade secret claims, and litigation over

the state law claims.  It includes not only the discovery

expenses related to these claims but also the motion practice

generated by them, including the litigation over the

supplementary copyright registrations.  It also includes

litigation over the request to voluntarily dismiss the

territorial violation claim and the appeal to the Court of

Appeals of Judge Forrest's conditional grant of that

application.  All of that is litigation related to the breach of

the territorial restrictions in the CSA.

There is very little of the litigation in this second

period that can be segregated from PaySys's claims for damages

premised on the asserted violation of the territorial

restrictions.  It appears that the only portions of the

litigation that may be properly segregated are the following

breach of contract claims:  the claim that Atos sold three APS

licenses during the statute of limitations period without

notifying PaySys of those sales and paying the required fees,

improper sublicensing, and improper assignment.[11]  These latter

two claims principally hinged on the construction of the

parties' agreements, and did not account for a large amount of

---

[11] PaySys identifies without further explanation an additional
category of "failure to limit by contract".  This claim -- at
least on its face -- is not sufficiently disentangled from the
territoriality claim to require further examination.

attorneys' fees.  PaySys calculates that Atos spent less than $350,000 in fees in litigating these three claims.[12]  It attributes over $217,000 of this sum to the APS claim.

As for the first period -- the period before the filing of the SAC -- Atos is awarded 60% of the fees that it is seeking that were incurred during this period.[13]  Neither the complaint nor its first amendment included as developed a territorial violation claim when compared to those allegations in the SAC. It was only with the filing of the SAC that PaySys unmistakably and in detail declared its hand in a formal pleading.  Although PaySys advised Atos before filing this lawsuit, and repeatedly thereafter during 2015, that it believed Atos had violated the territorial restrictions and although it pursued discovery in 2015 directly linked to that theory, this conservative calculation recognizes that the claim had not yet been pleaded as fully as it would be in the SAC and that other contractual breach claims were also articulated.

_____

[12] While PaySys made these calculations to show how little time could be attributed to the litigation of the territoriality claim, and while it failed to allocate roughly $2.5 million because it found the time entries insufficiently specific, these calculations provide at least a ballpark estimate of the amount of time that can be attributed to litigation of contract disputes severable from territoriality claims.

[13] As explained above, Atos is not seeking reimbursement of its fees connected to jurisdictional discovery.  It calculates this amount as $339,749.98.

The Atos attorneys' fees calculations reflect reasonable rates and hours.[14]  Atos has paid and is paying those fees.  Its attorneys have scrutinized its invoices with care before submitting them to Atos for payment, and no doubt the client has scrutinized them as well before paying them.  PaySys argues that Atos's fee calculations are flawed because they are based on inflated rates and supported by insufficient documentation.  That argument can be swiftly rejected.  The Court finds that Atos's calculations are reasonable and may be relied upon as the basis for this Opinion's award of attorneys' fees and costs.

B.  Copyright

Section 505 of the Copyright Act provides that a district court "may . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  Awards of attorneys' fees under Section 505 "should encourage the types of lawsuits that promote" the Copyright Act's goals of "encouraging and rewarding authors' creations while also enabling others to build on that work."  Kirtsaeng v. John Wiley & Sons, Inc., 136 S.Ct. 1979, 1986 (2016).  For purposes of this fee-shifting provision, a prevailing party is "one who has favorably effected a material alteration of the legal relationship of the parties' by court order."  Manhattan Review LLC v. Yun, 919 F.3d 149, 152 (2d Cir.

---

[14] Atos has made a trivial adjustment during this motion practice to correct a scrivener's error.

2019) (citation omitted).  In determining whether to exercise
its discretion to award fees under the Copyright Act a court may
consider "several nonexclusive factors," including
"frivolousness, motivation, objective unreasonableness, and the
need in particular circumstances to advance considerations of
compensation and deterrence."  Kirtsaeng, 136 S. Ct. at 1985
(citation omitted).

The Second Circuit, in the related context of Rule 11, Fed.
R. Civ. P., has defined "objective unreasonableness" for legal
theories as "whether the argument is frivolous, i.e. the legal
position has no chance of success, and there is no reasonable
argument to extend, modify, or reverse the law as it stands."
Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory,
Ltd., 682 F.3d 170, 177 (2d Cir. 2012)(citation omitted).  With
regard to factual contentions, objective unreasonableness
requires "a particular allegation" to be "utterly lacking in
support."  Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388
(2d Cir. 2003) (citation omitted).  "Although objective
reasonableness carries significant weight, courts must view all
the circumstances of a case on their own terms, in light of the
Copyright Act's essential goals."  Kirtsaeng, 136 S. Ct. at
1989.

While the Copyright Act provides for recovery of certain
costs in addition to attorneys' fees, it does not provide for

recovery of expert witness fees. "[T]he Copyright Act does not explicitly authorize the award of litigation expenses beyond the six categories specified in [28 U.S.C.] §§ 1821 and 1920. And §§ 1821 and 1920 in turn do not authorize an award for expenses such as expert witness fees, e-discovery expenses, and jury consultant fees." Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 878 (2019).

Atos is entitled to attorneys' fees under the Copyright Act for litigation associated with its U.S. and foreign copyright claims. As Judge Forrest recognized in her December 8, 2016 Opinion dismissing PaySys's foreign copyright claims, the foreign copyright claims were based on PaySys's domestic copyright registrations. PaySys Int'l, 226 F. Supp. 3d at 213. As such, fees associated with the foreign copyright claims are recoverable under the Copyright Act.

PaySys's pursuit of its copyright claims was objectively unreasonable and not motivated by any legitimate effort to protect a copyright in the CardPac software. An award will also act to deter wrongful use of the copyright law.

PaySys had given Atos's predecessor a license for the CardPac product in 1988. Over a decade later, it resolved all outstanding disputes regarding that license and entered the CSA. For years, until it was under new management and attempting to recover from its financial difficulties, PaySys had not

suggested that Atos was in breach of their agreement or infringing any copyright owned by PaySys. To succeed on a copyright claim against Atos, PaySys had to show both that Atos had breached its agreement with Atos, something it had no good reason to believe had occurred, and then that products that Atos had licensed within the period covered by the statute of limitations were derived from CardPac software programs in which PaySys owned a valid copyright. Furthermore, because PaySys had never registered its CardPac software, PaySys had to do so before it brought suit. PaySys did so just five weeks before filing this lawsuit.

PaySys's U.S. copyright claims were quickly dismissed, as it had no basis to claim that there had been any domestic infringement. Then, understanding that Atos was about to move for summary judgment on its foreign copyright claims, PaySys expanded the scope of its copyrights through supplemental registrations. Judge Forrest properly rejected this eleventh-hour effort to expand the scope of copyright, and dismissed the foreign copyright claims. This unusual history does not describe a good faith effort to enforce copyright claims in line with the goals of the Copyright Act. To the contrary, PaySys appears to have used the copyright claims to impose litigation costs on Atos, even after the U.S. copyright claim had been dismissed.

For the most part, for the reasons explained above, an award of fees under the Copyright Act would be largely duplicative of the fees awarded under the parties' contractual fee-shifting provision.[15]  Accordingly, Atos shall only be awarded fees connected to preparation of its fee applications. These are fees that may not be awarded pursuant to the contractual fee shifting provision.  Atos is awarded 25% of its attorneys' fees incurred in preparing the 2017 and present fee applications, and 25% of any fees incurred in defending against an appeal of the fees awarded in this Opinion.

C.   FUTSA

The FUTSA provides: "If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the prevailing party."  Fla. Stat. Ann. § 688.005. Whether attorneys' fees should be awarded under this statute rests within the sound discretion of the court.  See Chetu, Inc. v. Salihu, No. 09-60588-CIV-COHN, 2010 WL 2680088, at *1 (S.D. Fla. July 6, 2010).

PaySys's inability to articulate with any particularity the trade secrets on which its claim under the FUTSA was premised supports a finding that the claim was made in bad faith.  But,

---

[15] While Atos originally sought expert fees and costs under the Copyright Act, it appears in its reply brief to concede that it is unable to recover these expenses under Section 505.

30

because any fees awarded for litigating this claim would be duplicative of those awarded under the contractual fee-shifting provision, this request for fees need not be further addressed.

D. Section 1927 and Inherent Authority

Section 1927 provides that

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "To impose sanctions under § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 (2d Cir. 2018), cert. denied sub nom. Huebner v. Midland Credit Mgmt., 139 S. Ct. 1282 (2019) (citation omitted). The attorney's actions must be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 264 (2d Cir. 2015) (citation omitted).

Federal courts also possess inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process," which includes "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the

31

other side." <u>Goodyear Tire & Rubber Co. v. Haeger</u>, 137 S. Ct.
1178, 1186 (2017). A court "may exercise its inherent power to
sanction a party or an attorney who has acted in bad faith,
vexatiously, wantonly, or for oppressive reasons." <u>Ransmeier v.</u>
<u>Mariani</u>, 718 F.3d 64, 68 (2d Cir. 2013) (citation omitted).
"Bad faith may be found, not only in the actions that led to the
lawsuit, but also in the conduct of the litigation." <u>Hirschfeld</u>
<u>v. Bd. of Elections in City of N.Y.</u>, 984 F.2d 35, 40 (2d Cir.
1993) (citation omitted).

Pursuant to Section 1927 and the Court's inherent authority
Atos seeks recovery of its expert expenses and any fees and
costs not already awarded through this Opinion. Atos has made a
strong showing that many of the claims PaySys pursued in this
litigation were brought without PaySys having any reasonable
basis to believe that it would prevail on them. It has
explained not only how these claims lacked merit but also how
PaySys's chosen litigation strategy was a bad faith attempt to
extract a settlement through punishing legal costs.

PaySys's territorial violations claim -- which in turn, as
discussed above, formed the platform from which it pursued most
of its other claims -- was brought despite PaySys's complete
lack of evidence of any such violations. Atos's cooperation in
a year-and-a-half audit and production of a sample of sub-
licensing agreements prior to the filing of the lawsuit

indicated that Atos was in compliance with the parties'
agreement.

Throughout the litigation, PaySys doggedly pursued baseless
claims and multiplied the time the parties and the court spent
on this litigation.  For example, PaySys sought third-party
discovery pursuant to the Hague Convention of Atos's customers.
Judge Forrest characterized this as a fishing expedition.  While
the court rebuffed that effort, such discovery risked
interfering with Atos's business relationships and served no
legitimate purpose.

As already explained, PaySys also burdened Atos and the
court with unnecessary litigation connected to the
copyright/contract claims.  In one such example, after extensive
discovery of Atos's products and agreements, PaySys filed
supplemental copyright registrations to bolster its weak claims
for copyright infringement.  Nor could PaySys define the trade
secrets on which it premised its trade secret claims.

This course of conduct reflects that the litigation was
undertaken not because PaySys believed it had viable claims for
relief, but rather to gain a competitive advantage and to use
litigation as a profit center.  PaySys had no reason -- other
than a last-ditch effort to profit from an outdated product and
impose burdens on a successful competitor -- to resort to
litigation.

A final example of PaySys's vexatious use of litigation was its motion to voluntarily withdraw its only remaining claim -- the contract claim -- as the parties were briefing their summary judgment motions on that claim. PaySys made that motion to avoid its contractually imposed duty to pay attorneys' fees to a prevailing party. The appeal to the Second Circuit merely delayed the inevitable award of fees through needless and costly litigation. While the Court of Appeals determined that Judge Forrest should have allowed PaySys to withdraw it motion rather than accept the obligation to pay fees, that determination about important procedural rights, does not alter the fundamental point. PaySys feared the inevitable and sought to avoid it.

The bar for imposition of sanctions pursuant to Section 1927 or a court's inherent powers is high. This is as it should be. In light of the awards already made, and considering the complete history of this litigation, Atos is awarded 50% of its expert expenses and costs, or $258,873.00.

## Conclusion

Atos's March 11, 2019 motion for attorneys' fees is granted in part and PaySys's April 1, 2019 motion to strike is denied. Atos is entitled to 60% of the attorneys' fees it seeks for the period of December 23, 2014 to December 10, 2015, 80% of the attorneys' fees it seeks for the period of December 10, 2015

through November 20, 2018, and 25% of its attorneys' fees for
the 2017 and present fee applications.  Atos is also entitled to
50% of the expert expenses and costs it seeks, or $258,873.00.

      Dated:    New York, New York
               May 9, 2019

_____
DENISE COTE
United States District Judge